In the Matter of Irving Reginald CHAP-
PEL, Jr., Bankrupt.

No. 173825-EC.

United States District Court
S. D. California,
Central Division.

July 21, 1965.

Crowley & Goffin, by Ron Swearinger, Los Angeles, Cal., for petitioner on review.

Stodd & Barnett, by John P. Stodd, Santa Ana, Cal., for trustee.

CRARY, District Judge.

Petitioner, Loraine H. Chappel, wife of the bankrupt, Irving R. Chappel, seeks review of the Referee's order dated April 6, 1965, requiring petitioner to turn over to the trustee in bankruptcy "all of the property heretofore transferred to her under the Interlocutory Decree of Divorce and Property Settlement Agreement," or the proceeds derived therefrom. The Referee's Certificate on Petition for Review was filed on May 6, 1965.

A property settlement agreement, executed by the bankrupt and petitioner on February 11, 1964, was incorporated into an interlocutory decree of divorce entered on March 5, 1964. Pursuant to said agreement, petitioner received more than one-half of the community property, the bankrupt agreed to pay family debts and obligations totaling $22,756.01, petitioner agreed to pay $2,000.00 to Irving Chappel's parents upon the sale of the residence in Newport Beach, and petitioner "For and in consideration of this Agreement * * * hereby expressly waives any and all claims which she has to alimony and support for all time."

The parties were married on January 24, 1959. Final judgment of divorce was entered on March 5, 1965.

The within proceedings in bankruptcy were instituted June 24, 1964.

During oral argument, July 12, 1965, counsel for the petitioner and Referee stipulated that the only issue to be determined is whether the transfer to petitioner of the community property in excess of the wife's one-half vested interest therein was without fair consideration and therefore fraudulent within the meaning of Section 67, sub. d(2) (a) of the Bankruptcy Act, 11 U.S.C. § 107, sub. d(2) (a) and § 3439.04 of the California Civil Code; that is, whether the foregoing of any right to alimony by the petitioner, Mrs. Chappel, was fair consideration for the community property she received in excess of one-half thereof.

Section 67, sub. d(2) (a) provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent;  *  *  *."

and, Section 3439.04, California Civil Code, states:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Counsel for petitioner and Referee also agreed that there was no bad faith claimed on the part of petitioner and that the only fraud urged is statutory fraud as referred to in the state and federal statutes quoted hereinabove.

The Court of Appeals for the 9th Circuit, in Britt v. Damson, 334 F.2d 896 (1964), makes very clear that the transfer to the petitioner of one-half of the community property was supported by "fair consideration" as a matter of law. At page 903, the court states:

"To the extent that the value of the community property awarded to Mrs. Damson was offset by the value of the community property awarded to Mr. Damson, the 'transfer' to Mrs. Damson was, as a matter of law, supported by 'fair consideration,' as that term is defined in section 67, subd. d(1) (e). To this extent the award to each amounted to no more than an equal partition of property in which, as indicated above, they each at all times had a vested, equal undivided interest."

As to the transfer of property to Mrs. Chappel in excess of one-half of the community property, the court, in the Britt case, observes:

"To the extent that the award of community property to Mrs. Damson may have exceeded half of the total value of the community property, there is a question whether, under all of the circumstances, Mr. Damson received fair consideration as a matter of law.[13] As the parties have not presented argument on this question we leave it undecided at this time."

It appears to this court that footnote 13, as indicated in the portion of the opinion last quoted above, is of particular import in the instant matter. Said footnote 13 reads in pertinent part as follows:

"13. It could be argued that obtaining one's release from a marriage, pursuant to a decree of divorce, and in connection therewith, obtaining a limitation upon the obligation, not terminated by divorce, to provide future support, such limitation being effectuated by a provision for alimony, give rise to a conclusive presumption of 'fair consideration' for any transfer of community property made under that decree, unless made in bad faith or fraudulently."

The court concludes in the case at bar that if the husband did not receive fair consideration as a matter of law for the excess of one-half of the total community property transferred to his wife, then there will be a question of fact to be resolved as to this point.

The Referee, by his Finding No. 6, found

"That the bankrupt herein was insolvent on February 11, 1964, when the Property Settlement Agreement was completely executed by the parties, and was also insolvent on March 2, 1964, the date the Interlocutory Decree was entered."

Under the stipulation of counsel at the time of oral argument, we now know that this finding of "insolvency" is dependent on the question of whether the transfer of community property in excess of 50% thereof to the wife was without fair consideration.

■ The Referee, in Conclusion of Law No. 1, states that the property settlement was without adequate consideration and therefore presumed fraudulent as to the trustee in bankruptcy. In Conclusion of Law No. 2 he states that since no final decree of divorce had been entered prior to the time Mr. Chappel was adjudicated a bankrupt " * * * the interlocutory decree of divorce and hence the incorporated property settlement agreement were ineffectual to change the character of the community property of the parties." In reaching this conclusion, the Referee relied on In re Cummings, 84 F.Supp. 65, 70 (D.C.Cal.1949), in which the Court said:

"In sum, the interlocutory decree is merely a determination that after the lapse of a year, the parties would—if no impediments have arisen—be entitled to a decree dissolving the marital relation and disposing of the community property in the manner described in the interlocutory decree. Its provisions are not operative until the entry of the final decree * * *."

In the paragraph preceding this statement, the Court quoted with approval the following sentence from Estate of Boeson, 201 Cal. 36, 40; 255 P. 800, 802 (1927):

"The obtaining and entry of an interlocutory decree of divorce does not sever the marital relation, and any disposition of property made thereby becomes effective only upon the entry of the final decree."

In Leupe v. Leupe, 21 Cal.2d 145, 148, 130 P.2d 697, 699 (1942), the Court expressly disapproved of language in the Boeson case that was in opposition to its holding that

"* * * the trial court is without jurisdiction to modify an unqualified disposition of property rights made in an interlocutory decree of divorce except in accordance with the methods applicable to judgments generally, time for which had expired in this case before respondent's motion was made. Even though a final decree is not entered, the interlocutory decree becomes a conclusive adjudication and is res judicata with respect to all issues determined." [Citing cases.]

And, the Court observes at page 700, of 130 P.2d:

"* * * The time for appeal having elapsed, the determination of property issues in the interlocutory decree became final and was no longer subject to modification except in accordance with the methods applicable to judgments generally. It follows that the court could not alter the decree * * *."

As to the case of Estate of Boeson, supra, the Court, in the Leupe case, supra, states at page 699, of 130 P.2d:

"This statement of the law has not been followed and has also been characterized as dictum. * * * Insofar as the language of these cases suggests that a court is without jurisdiction to make an unqualified disposition of property in an interlocutory decree of divorce, it is

in opposition to the cases previously cited and must be disapproved."

In the instant case, the record on review discloses that neither an appeal has been taken from the interlocutory decree nor a motion made for relief under California Code of Civil Procedure Section 473. Since the decree in the instant case was entered on March 5, 1964, the time for appeal, or for relief under Section 473, has expired and the interlocutory decree has effectively and conclusively disposed of the property. See In re Snow's Estate, 152 Cal.App.2d 800, 314 P.2d 82 at 83 (1957).

Having in mind the question to be determined, as noted above, and that the only issue of fraud or bad faith is the statutory fraud referred to above, and after considering the authorities cited and discussed, it appears to the court, in the circumstances, that the interlocutory decree of divorce, having incorporated the property settlement agreement, finally disposed of the community property and the obligation of Mr. Chappel to support his wife by way of alimony, and that this fact gives rise to a rebuttable presumption that the waiver of alimony was fair consideration for the excess over 50% of the total value of the community property awarded the wife.

In determining "fair consideration", it is to be noted that Section 67, sub. d(1) (e) of the Bankruptcy Act, 11 U.S.C. § 107, sub. d(1) (e), provides:

"(e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, * * *."

Counsel for the trustee urges that the value of the waiver of alimony is impractical and as a matter of fact impossible of ascertaining and that, therefore, in cases of this nature and like circumstances a property settlement agreement incorporated in an interlocutory decree must be set aside on the husband's adjudication in bankruptcy as to any amount in excess of 50% of the community property awarded the wife, thus defeating any rights of the wife to an excess of 50% which may have been awarded to her as consideration for her waiver of all rights to alimony following good faith negotiations between the parties.

The Court does not conclude that the rights of the wife to alimony, now finalized by the interlocutory decree of divorce, may be summarily denied in the circumstances because the value of the said rights to alimony may be difficult to ascertain. Although the determination of the value of the right to alimony waived by the wife herein may be fraught with some problems, we must remember that the husband and wife and their counsel worked this problem out before the property settlement was executed and the same factual elements as well as possible expert testimony in this field may well be presented to the Referee on further hearing of the issue. The Referee may decide that the husband and wife did not arrive at the correct answer value wise, but the reasonable value of the wife's right to alimony at the time of the execution of the property settlement, it appears to the court, is well within the realm of the fact finding powers of the Referee.

The matter is remanded to the Referee with the request that further hearing be had therein. The court concludes that in view of the decision in the Britt case, supra, that the Referee should make a finding, after a consideration of all of the evidence now before him and any additional evidence which may be adduced by way of experts or otherwise, as to whether the waiver of alimony by the petitioner in this case is fair consideration, within the meaning of the statute, for the excess over one-half of the total value of the community property transferred to petitioner under the property settlement agreement. If it be found that the waiver of alimony be not such "fair consideration," in the circumstances, then there should be a finding as to what extent it falls short thereof. The court makes no finding as to the gross or

net value of the community property of the parties. It is further requested that the Referee make new Findings of Fact and Conclusions of Law and Order following further hearing in the matter, conforming to the authorities cited and discussed hereinabove and the suggestions of the Court in the within Memorandum. The Findings of Fact and Conclusions of Law of the Referee which are in conflict with said authorities, as indicated by the within Opinion, are set aside and the Order of the Referee as made on April 6, 1965, is set aside pending the making of new Findings of Fact and Conclusions of Law and Order in conformity therewith.