JAMES DICKSON PHILLIPS, Circuit Judge:
 

 Upon suit by the trustee in bankruptcy, the bankruptcy court for the Western District of North Carolina found a conveyance of property from a debtor to his wife, in exchange for the release of marital rights of support and inheritance, to be fraudulent and voidable under 11 U.S.C. § 548. This appeal is from the district court’s judgment affirming the bankruptcy court. We vacate in part and remand for further factual development of the issue whether the wife’s release of her marital rights constituted “reasonably equivalent value” within the meaning of § 548.
 

 I
 

 After being married for more than thirty years, Jerald and Irma Snyder entered into a separation agreement whereby Jerald would transfer to Irma his half-interest in their residence in exchange for her release of any claims against him for support, alimony, or inheritance. Seven days later, on April 29, 1980, the Snyders conveyed the residence to a third party for $80,000, and Jerald fulfilled his obligation under the separation agreement by assigning his portion of the proceeds to his wife. Thereafter, the Snyders have lived separately, although they have never been divorced.
 

 On October 10, 1980, Jerald Snyder filed a voluntary petition for bankruptcy pursuant to 11 U.S.C. § 301. The trustee in bankruptcy then instituted suit in the bankruptcy court for the Western District of North Carolina, seeking pursuant to 11 U.S.C. § 548 to avoid the transfer by Snyder of his half-interest in the residence. The bankruptcy judge determined that, as a matter of law, there was no “reasonably equivalent value” given by Irma Snyder in exchange for her husband’s half-interest. A jury to whom the issue was submitted by the bankruptcy judge found' as fact that Jerald Snyder “became insolvent” as a result of the transfer. These two determinations having satisfied the statutory predi
 
 *711
 
 cates for avoidability under § 548(a)(2)(A), (2)(B)(i), the bankruptcy judge entered judgment in favor of the trustee avoiding the transfer and the district court affirmed that judgment. Irma Snyder then brought this appeal, challenging the jurisdiction of the bankruptcy court, the legal ruling that she had not given her husband “reasonably equivalent value,” and the jury finding of insolvency. We address these contentions seriatim.
 

 II
 

 Based upon the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line
 
 Co., - U.S. -, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), appellant contends that the bankruptcy court could not constitutionally exercise jurisdiction over this case. If this argument were to prevail, the effect would be to nullify the entire course of proceedings to date, necessitating remand to the district court for reconsideration of both the legal and factual issues decided by the bankruptcy court. Because of the prospective-only effect of the
 
 Northern Pipeline
 
 decision, the argument must fail.
 

 In holding unconstitutional the allocation in the Bankruptcy Reform Act of 1978 (the Act) of judicial powers to bankruptcy judges, the
 
 Northern Pipeline
 
 Court stayed entry of its judgment until December 24, 1982,
 
 [1]
 
 to “afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws.”
 
 Id.
 
 102 S.Ct. at 2880.
 

 This must mean more than merely that, after December 24, exercise of the judicial powers conferred upon bankruptcy judges by the Act would be unconstitutional. It must signify as well that decisions rendered by bankruptcy courts under the Act and before the effective date of the judgment in
 
 Northern Pipeline
 
 are presumptively valid as a constitutional exercise of congressionally conferred judicial authority. Otherwise, the Supreme Court’s stated desire to enable “interim administration of the bankruptcy laws” could not be effectuated.
 

 Given this conclusion, we accept as constitutional the bankruptcy court’s exercise of jurisdiction over this case, which occurred well prior to the entry of judgment in
 
 Northern Pipeline,
 
 and turn to the merits of Snyder’s assignments of error.
 

 Ill
 

 A trustee in bankruptcy may avoid a transfer of a debtor’s interest in property, made within one year of the filing in bankruptcy, if the debtor “received less than a reasonably equivalent value in exchange for such transfer,” 11 U.S.C. § 548(a)(2)(A), and was insolvent on the date of transfer “or became insolvent as a result” of it,
 
 id.
 
 § 548(a)(2)(B)(i). Section 548(d)(2)(A) provides that “ ‘value’ means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor.” A critical principle, therefore, is that “reasonably equivalent value” under § 548 “excludes future considerations, at least to the extent not actually performed.” 4
 
 Collier on Bankruptcy
 
 ¶ 548.07, at 548-66 (15th ed. 1982).
 

 Faced with this statutory formulation, both the bankruptcy court and the district court concluded as a matter of law that Irma Snyder had not given “value” in exchange for her husband’s half-interest in the residence. The district court drew “a distinction between cases where there is a divorce or court order and the cases where there is only an agreement between husband and wife,” reasoning that “value” within the statutory meaning required in this circumstance a release of court-mandated alimony or support payments. Under this view, the conveyance between the Sny-ders was voidable because Jerald was under no judicial compulsion at the time of transfer to make payments to his wife, so that her release of rights to support and inheri
 
 *712
 
 tance did not satisfy a “present or antecedent debt.”
 

 This rationale construes too narrowly the statutory meaning of “value.” If, at the time of transfer, Jerald Snyder owed a presently enforceable legal obligation of support to his wife, her release of that obligation — whether or not the obligation was manifested in a judicial decree — in exchange for the transfer of his half-interest in the residence would — to that extent
 
 [2]
 
 —constitute satisfaction of a “present or antecedent debt.”
 
 Cf. In re Chappel,
 
 243 F.Supp. 417, 420 (S.D.Cal.1965) (waiver of alimony by wife could be fair consideration for husband’s transfer of community property).
 

 To determine whether there existed such an obligation of support, we look to North Carolina law.
 
 [3]
 
 That law clearly imposes a continuing legal duty upon a husband to support his wife.
 
 [4]
 

 See 2
 
 R. Lee,
 
 supra
 
 note 3, § 128. This duty is enforceable in a variety of ways: through criminal sanctions imposed for willful abandonment coupled with nonsupport, N.C.Gen.Stat. § 14-322 (1981), and through civil decrees granting alimony, alimony pendente lite, or alimony without divorce,
 
 see id
 
 §§ 50-16.1, 50-16.8 (1976), on the basis of misconduct or failure to support,
 
 see id
 
 § 50-16.2. It is a duty considered to be so fraught with a public interest that any contractual undertaking between a husband and wife living together and not contemplating imminent separation which purports to quantify or limit the duty is, under North Carolina law, void as against public policy.
 
 Motley v. Motley,
 
 255 N.C. 190, 120 S.E.2d 422 (1961); 2 R. Lee,
 
 supra
 
 note 3, § 183.
 
 [5]
 

 On the other hand, North Carolina law has long recognized that the husband’s duty of support may be discharged by a valid separation agreement between the spouses under which fixed benefits are provided the wife in consideration of the discharge.
 
 Archbell v. Archbell,
 
 158 N.C. 408, 74 S.E. 327 (1912).
 
 See generally
 
 R. Lee,
 
 supra
 
 note 3, § 183; Merritt,
 
 supra
 
 note 4, at 97. To be valid such an agreement must (1) be made between spouses either actually separated or intending immediately to separate, 2 R. Lee,
 
 supra
 
 note 3, § 187, at 460, 463, and (2) be executed in accordance with statutory formality requirements,
 
 see
 
 N.C. Gen.Stat. § 52-10.1 (Supp.1981).
 

 Applying these principles to the matter at hand, it would appear on the face of the record on appeal that the Snyders may indeed have entered into a valid, enforceable separation agreement the effect of which under state law could be the satisfaction of a present obligation of support owed by the bankrupt to his wife.
 
 [6]
 
 We
 
 *713
 
 recognize, however, that the basis of decision in the bankruptcy and district courts did not necessitate inquiry into the validity and enforceability under state law of the separation agreement. This must therefore be considered an open question for resolution upon remand. If it be determined that the separation agreement was a valid and enforceable one under state law, this would necessarily satisfy the requirement of § 548 that Irma’s release of support rights under it was — to that extent — in satisfaction of a “present or antecedent debt” of the bankrupt spouse. There would still remain for resolution, however, the second-level issue under § 548 whether the release of support rights constituted “reasonably equivalent” value for the transfer of the bankrupt’s one-half interest in the residence.
 
 [7]
 
 These issues must be addressed in the first instance upon the remand we order.
 

 IV
 

 Irma Snyder challenges as well the jury finding that her husband “became insolvent,” within the meaning of § 548(a)(2)(B)(i), as a result of the transfer of his half-interest in the residence. We cannot accept her argument that her husband’s misstatement of assets on his bankruptcy petition misled the jury and thus fatally infected the jury verdict; the question of the bankrupt’s assets and liabilities was fully presented and argued in detail to the jury, and there was no error which would justify setting aside its factual finding. Accordingly, we affirm this portion of the proceedings.
 

 V
 

 The jury finding that the bankrupt became insolvent as a result of the transfer at issue is affirmed. In all other respects, we vacate the judgment and remand the case to the district court for further proceedings consistent with this opinion. We note that further proceedings must be in conformity with the Interim Bankruptcy Rules now in effect,
 
 see
 
 51 U.S.L.W. 2382 (Jan. 4, 1983).
 

 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 

 [1]
 

 . The judgment was first stayed to October 4, 1982,
 
 see Northern Pipeline,
 
 102 S.Ct. at 2880, then to the later date, see - U.S. -, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982).
 

 [2]
 

 . Though not to the extent of any “inheritance rights” also included among the interests released by the wife. Putative inheritance rights obviously could not be considered to reflect a “present or antecedent debt” of the debtor-husband under § 548.
 

 [3]
 

 . Although the parties have not directly addressed the point, it is apparent that questions concerning the marital rights and duties of North Carolina domiciliaries — and any attempted modification of the marital status by an agreement executed in North Carolina — will be governed by North Carolina law. See 2 R. Lee,
 
 North Carolina Family Law
 
 §§ 185, 202 (4th ed. 1980). See
 
 also Butner v. United States,
 
 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-918, 59 L.Ed.2d 136 (1979).
 

 [4]
 

 . While spousal legal duties of support are obviously undergoing widespread reexamination, the male spouse’s duty remains an undoubted element of North Carolina family law. See Merritt,
 
 Changing Marital Rights and Duties by Contract: Legal Obstacles in North Carolina,
 
 13 Wake Forest L.Rev. 85, 96-99 (1977).
 

 [5]
 

 . N.C.Gen.Stat. § 52-10 (Supp.1981), which authorizes post-nuptial interspousal agreements “not inconsistent with public policy” that affect the spouses’ marital “property” interests, is construed not to apply to the husband’s obligation, and the wife’s right, to support.
 
 See Motley v. Motley,
 
 255 N.C. 190, 120 S.E.2d 422 (1961) (construing statutory predecessor of § 52-10); 2 R. Lee,
 
 supra
 
 note 3, § 183, at 441-43, § 187, at 460; Merritt,
 
 supra
 
 note 4, at 97-98.
 

 [6]
 

 . The district court observed that “the debtor and his wife ... entered into a separation agreement.” Appellant’s brief, in its description of the case, says that “the couple ultimately executed a separation agreement, ... [and that] [p]ursuant to this writing, the [wife] released any and all right to alimony, support and inheritance.” Similarly, appellee’s brief states
 
 *713
 
 that “the debtor executed a deed of separation to his wife.” A copy of the agreement is included in the record on appeal.
 

 [7]
 

 . Consideration of equivalence in value for this purpose should be limited to the value of the support rights and should not run to any separate value that might be assigned putative “inheritance rights” also stated to be among the interests released.
 
 See supra
 
 note 2.
 

 State law principles providing that a court will not inquire into the exchange of values in a separation agreement absent fraud or a total failure of consideration,
 
 see Van Every v. Van Every,
 
 265 N.C. 506, 511-12, 144 S.E.2d 603, 605 (1965), have no bearing on the entirely distinct question of whether there has been a “reasonably equivalent” exchange under federal bankruptcy law.