In re Thomas John LANGE, Debtor.

Steven GOLDSTEIN, Trustee, Plaintiff,

v.

Thomas John LANGE, Kathleen Lange, Jack F. Vanek, and Dorothy A. Vanek, Defendants.

Bankruptcy No. 81–02361(1).
Adv. No. 82–0141(1).

United States Bankruptcy Court,
E.D. Missouri, E.D.

Dec. 5, 1983.

---

Mark G. Zellmer, St. Louis, Mo., for plaintiff-trustee.

Gregory Luzecky, Ellisville, Mo., for defendants Kathleen Lange and Jack F. Vanek and Dorothy Vanek.

Thomas John Lange, Debtor.

Robert Moss, St. Louis, Mo., for debtor.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

In a case pending under the Bankruptcy Code, pending upon a voluntary petition filed October 5, 1981, the Trustee seeks, by a three-Count Complaint, (1) to avoid transfers of Debtor's interest in real estate, by the Debtor Defendant (Thomas John Lange) to his former spouse, Defendant Kathleen Lange (Kathleen), and, subsequently, by her to herself and her mother and step-father, Defendants Vanek, as joint tenants;[1] and/or (2) to recover the value of Debtor's interest, which he transferred, in the real estate.

The Complaint is brought under 11 U.S.C. 548(a)(2) and 550(a):

Section 548 provides in pertinent part

"(a) The Trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

· · · · ·

---

1. Count I of the Complaint requests relief against the Debtor; Count II requests relief against Kathleen; Count III requests relief against the Defendants Vanek. The relief requested in each Count is the same: that the alleged transfer be set aside and/or that judgment in the sum of $75,000 be awarded the Plaintiff.

The subject real estate is known as 1270 Perdiz Lane, Fenton, MO, more particularly described as

Lot 35 of San Luis Hills, Plat Two, as per plat thereof recorded in Plat Book 145 pages 52 and 53 of the St. Louis County Records.

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

. . . . .

(d)(1) For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, . . .

(2) In this section—

(A) 'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; . . ."

Section 550 provides, in pertinent part:

"(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from

(1) the initial transferee of such transfer . . .; or

(2) any immediate or mediate transferee of such initial transferee."

. . . .

The subject real estate was acquired by Debtor and Kathleen during their marriage, acquired by them as tenants by the entirety, and was their former marital residential real estate; it is now being occupied by Kathleen and her minor daughter (born to the marriage on March 20, 1972).

Debtor and Kathleen were married on November 15, 1968. They separated in November, 1979. A decree dissolving the marriage was entered by the Circuit Court of St. Louis County, Missouri, on December 15, 1980.

Prior to the giving of testimony in the dissolution proceeding, and while waiting for the call of the dissolution case, a three-page agreement was drafted, and written in longhand on blank Circuit Court memorandum forms, on behalf of the Debtor and Kathleen. The agreement was executed by the Debtor and Kathleen subsequent to the giving of the testimony and subsequent to the dissolution Chancellor's pronouncement that a dissolution was decreed. The unsigned agreement was presented to the dissolution Chancellor during Kathleen's testimony, but it was not approved by him, apparently because the Chancellor thought the agreement not to be legible; nor was it incorporated into the dissolution decree, nor was it found by him to be conscionable.

The agreement provides for a division of the couple's property, the payment of various outstanding debts, the custody and child support of the minor child, a waiver of maintenance by both parties, an apportionment of court costs, and for the payment by each of his/her respective attorney's fees.

By the agreement, Kathleen was to receive the subject real estate, all of their furniture, and a 1976 Buick Regal. Debtor was to receive, under the agreement, an encumbered 1978 Ford Thunderbird, Kathleen agreeing to pay the amount of the secured debt. No values were ascribed in the agreement to the various items of property.

In a Statement Of Property filed by Kathleen in the Dissolution cause, she valued the household goods and furniture at $2,000, alluding to an encumbrance of some $600; and she valued the 1976 Buick Regal at $1,000 (Plaintiff's Exh. 6). In his financial statement filed in the Dissolution cause, Debtor valued the 1978 Ford Thunderbird at $2,900. Kathleen testified (at the Dissolution Cause) that $2,300 was owed on the Thunderbird, and that she was going to pay the secured debt. She did, soon thereafter, pay the secured debt.

At the trial of the cause sub judice, it was stipulated that the parties' residential real estate had a value of $54,000 on the date of

dissolution and on the date of the trial sub judice. Obviously, the residence was the parties' major asset. At the time of dissolution, approximately $28,000 was owed on two notes, each secured by a deed of trust encumbering the real estate. Thus, at the time of dissolution, the homestead real estate had about $26,000 in equity.

Kathleen agreed, in the agreement entered into by her with the Debtor, on the day of the dissolution, to make the installment payments on the deed of trust notes, and to hold Debtor harmless in respect thereof. They agreed that Kathleen was to receive the real estate, and Debtor agreed to execute the necessary transfer instrument(s) to transfer his interest in the real estate to her.

On December 16, 1980, the day following the Dissolution hearing, Debtor quit-claimed his interest in the real estate to Kathleen. (The deed was recorded in St. Louis County, Missouri, the proper place, on February 25, 1981.) On September 21, 1981, two weeks prior to bankruptcy, Kathleen conveyed the real estate, by quit-claim deed, to herself and to the Defendants Vanek, as joint tenants. (This deed was suitably recorded on September 24, 1981). Kathleen did not receive any value or consideration, from the Vanek's for the transfer to them of an interest in the real estate.

Kathleen has been making the payments on the two secured debts, so that the secured balances had been reduced to approximately $24,000 at the time of the trial sub judice.

By the agreement entered into on the morning of the Dissolution hearing, Debtor also agreed "to assume all" of the outstanding bills "except for" the furniture bill, and agreed "to assume all medical and dental expenses for minor child over and above medical coverage". The amount of the "outstanding bills", assumed by Debtor, was not developed with any degree of precision; but the evidence sub judice reflects that as much as $8,984.61 in such bills was owed, or as little as $6,150.54 was owed by Debtor at the time of dissolution, and that such sums were owed on the following day when Debtor executed the quit-claim deed.

. . . .

The transfer of Debtor's interest [2] in the real estate was made within one year of the filing of the bankruptcy case. Defendants do not dispute that postulate. Debtor became insolvent as the result of the transfer. And Defendants do not dispute that postulate.

To avoid the application of Section 548(a)(2) to the transfer, Defendants contend that the Trustee failed to prove that Debtor did not receive reasonably equivalent value,[3] within the meaning of the Section, for his transfer; and that Debtor *did* receive such value for his transfer, an issue ruled upon and resolved by the State Court, the Dissolution Court.

■ The theme underlying Defendants' contentions—as an undercurrent—is that, as a policy matter, Section 548 ought not to have application to any transfer decreed to be made in a marital dissolution case; and that, since Courts are wont to encourage settlements, a transfer agreed to by the parties in a marital dissolution cause ought to enjoy the same immunity. It should be noted that Section 452.325 V.A.M.S. expressly encourages the amicable settlement of disputes between spouses during a dissolution or separation proceeding.

---

**2.** It should be noted, here, that upon the entry of the decree of dissolution, on December 15, 1980, *the interest of the Debtor, and of Kathleen, in the real estate, became as tenants in common, each owning an undivided one-half interest in the real estate.*

**3.** "Value" is defined in Section 548(d)(2)(A), *supra* (as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."). "Relative" is *not* defined by 11 U.S.C. 101(34) to include a former spouse, *and the legislative history anent 101(34) makes* it clear that a former spouse is not a "relative" within the definition. H.R.Rep. No. 595, 95th Cong. 1st Sess. 311, *reprinted* in [1978] U.S. Code Cong. & Ad.News 5787, 5963, 6270; S.Rep. No. 989, 95th Cong., 2d Sess. 26, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5812.

Section 548 does *not* explicitly except from the Trustee's avoiding powers under it any transfer made pursuant to separation agreements, property settlements or divorce decrees. An examination of the history of the Section and its predecessors suggests, however, that the problem was not really considered. See generally: McLaughlin, *Application Of The Uniform Fraudulent Conveyance Act,* 46 Harv.L.Rev. 404 (1933). Nevertheless, the case law in point, scarce as it is, seems to permit the application of the Section to a transfer made pursuant to a decretal provision in a marital dissolution cause, or pursuant to a property settlement agreement, if all of the elements embraced by the Section are present.

In *Britt v. Damson,* 334 F.2d 896 (9th Cir., 1964), relied upon by the Trustee, the Bankruptcy Trustee brought suit, in the District Court, against the bankrupt's former wife, to obtain title to and possession of community property which had been awarded to her in a divorce proceeding five months before the bankruptcy petition was filed. The District Court granted summary judgment in favor of the bankrupt's former wife.[4] The Court of Appeals reversed, holding that genuine issues of material fact remained to be decided, including bankrupt's insolvency at the time of transfer, and his receipt of fair consideration for the transfer.

With respect to the latter issue the court stated, at p. 903:

"To the extent that the value of the community property awarded to Mrs. Damson was offset by the value of the community property awarded to Mr. Damson, the 'transfer' to Mrs. Damson was, as a matter of law, supported by 'fair consideration,' as that term is defined in section 67, subd. d(1)(e). To this extent the award to each amounted to no more than an equal partition of property in which, as indicated above, they each had a vested, equal undivided interest.

To the extent that the award of community property to Mrs. Damson may have exceeded half of the total value of the community property, there is a question whether, under all of the circumstances, Mr. Damson received fair consideration as a matter of law. As the parties have not presented argument on this question we leave it undecided at this time. If Mr. Damson did not receive fair consideration as a matter of law, then there will be a question of fact to be resolved as to this . . .

From what has been said it will be evident that, at most, the trustee can enforce rights only to the extent, if any, that the value of the award to Mrs. Damson exceeded one half of the total value of the community property."[5]

In *Gray v. Snyder,* 704 F.2d 709 (4th Cir., 1983)[6] the Bankruptcy Trustee successfully asserted, in the Bankruptcy Court, and in the District Court on appeal, a claim under 11 U.S.C. § 548(a)(2), against a Debtor's wife, to recover $40,000, the value of the Debtor's half-interest in their residential real estate sold by them on April 29, 1980 (for $80,000), which he transferred to her under a separation agreement, entered into on April 22, 1980, by which he agreed to transfer his interest for her release against him of any claims for support, alimony, or inheritance. Subsequent to the agreement, the parties lived separately but did not divorce. The husband's bankruptcy ensued,

---

4. For reasons not related to the fraudulent conveyance provisions of the Bankruptcy Act, Section 67(d)(2)(a) of that Act, 11 U.S.C. 107(d)(2)(a) [Bankruptcy Act].

5. In its footnote 13, loc cit 903, the Court suggests that it could be argued that obtaining a limitation, by the divorce decree, upon the obligation, not terminated by divorce, to provide future support may give rise to a conclusive presumption of "fair consideration" for any transfer of community property made under the decree, unless made in bad faith or fraudulently. The Court did not so hold, no more than it held that the Trustee was entitled to recover upon his fraudulent conveyance theory.

The Court's suggestion is not relevant here, where, as is pointed out infra, Kathleen was not entitled to an allowance of maintenance.

6. Decided and reported since the submission of this cause.

on a voluntary petition filed October 10, 1980.

The cause was tried to a jury, the jury finding that the transfer left the husband/Debtor insolvent, a finding affirmed by the Court of Appeals. The issue of reasonably equivalent value was not submitted to the jury, however, the Bankruptcy Judge having ruled, as matter of law, that the wife did not give a reasonably equivalent value for her husband's magnanimous transfer.[7]

The District Court affirmed, being of the view that because a *decree* did not obligate the wife to waive her alimony, or deprive her of alimony, as a condition for the transfer, "value", or "consideration" was not given by the wife for the transfer.

The Court of Appeals, considering North Carolina law (which permits of valid separation agreements, in contemplation of separation, and permits such agreements to fix benefits for a wife in lieu of support), found the District Court view too narrow a construction of "value", and remanded the cause for a determination whether (1) the separation agreement was valid under North Carolina law so that, if so, there was "value" given for the transfer; and (2) if so, whether the wife's release of continuing support was "reasonably equivalent value". As stated by the Court, loc cit 713

> "If it be determined that the separation agreement was a valid and enforceable one under state law, this would satisfy the requirement of Section 548 that Irma's release of support rights under it was—to that extent—in satisfaction of a 'present or antecedent debt' of the bankrupt spouse. There would still remain for resolution, however, the second-level issue under Section 548 whether the release of support rights constituted 'reasonably equivalent' value for the transfer of the

bankrupt's one-half interest in the residence."[8]

Amplifying the dissertation, in footnote 7, loc cit 713, the Court commented that "State law principles providing that a court will not inquire into the exchange of values in a separation agreement absent fraud or a total failure of consideration ... have no bearing on the entirely distinct question of whether there has been a 'reasonably equivalent' exchange under federal bankruptcy law".

*Gray v. Snyder* comports with the only 8th Circuit decision even remotely on point, decided long prior to the advent of the Bankruptcy Code. In *Smith v. Kehr*, 2 Dillon 50, 7 Natl.Bankr.Reg. 97 (E.D.Mo.), aff'd 87 U.S. 31, 20 Wall 31, 22 L.Ed. 313 (1873), a St. Louis trader, his wife, and her trustee executed a marital separation agreement. By this agreement, the husband was to convey $7,000 to the trustee for the wife in full satisfaction of any claim for maintenance, support, alimony, or dower. The trustee also agreed to hold the husband harmless from any debts the wife might contract in the husband's name. The husband gave to the trustee $2,000 in cash and executed notes and a Deed of Trust to secure payment of the remaining $5,000 with interest. The parties separated, but then reconciled just two and one-half months later.

A second agreement was entered into whereby all past differences were forgiven and all stipulations of the original separation agreement were rescinded, except those relating to the creation of the wife's separate estate. The wife was to keep the property conveyed as part of the first agreement, although payment of interest on the $5,000 was waived so long as the parties continued living together. They lived together four more years until the husband left the country. Shortly thereafter he was

---

**7.** One has the distinct impression, while reading the facts of this case, that the transfer was malevolent, spawned and consummated in actual fraud of the husband's creditors. However, the case was not submitted on that theory. See Section 548(a)(1), 11 U.S.C.

**8.** The Court stated that a claim to putative inheritance rights could *not* be considered a "present or antecedent debt" of the Debtor, and that a waiver of such claim does not constitute value under 11 U.S.C. 548(d)(2)(A).

declared a bankrupt. The property subject to the Deed of Trust was sold and the proceeds held pending disposition of the case. The District Court held that the Deed of Trust executed for the benefit of the wife was null and void as to the bankrupt's creditors and that the wife was entitled only to a $1,000 Missouri homestead exemption out of the sale proceeds. The District Court so held because the second agreement withdrew all of the valuable consideration given by the wife in the original agreement:

"The deed of settlement as originally drawn and executed was, in legal contemplation, for a valuable consideration, and if the second agreement had not rescinded all provisions of the first, except the grant of the separate estate, that grant would remain valid. But, unfortunately for Mrs. Meyer (the bankrupt's wife) the last agreement withdrew all of the consideration which was 'valuable' as contradistinguished from 'voluntary'. After the last agreement there was no covenant to relinquish dower, etc.; all covenants on the part of her self and trustee were expressly rescinded. The grant thus existed as if made for love and affection merely."

2 Dillon at 59–60. The Court also stated in dictum:

"Where a post-nuptial settlement is made in consideration of relinquishment of dower, and of maintenance, especially where the wife's trustee joins in the covenants, that the wife will, in consideration of the settlement made, relinquish all claims to dower in her husband's estate, and will contract no debts on his account, etc., such a settlement is for a valuable consideration, and will be upheld in law, and cannot be assailed in equity by the husband's creditors, *unless the amount so settled on the wife is unreasonable or excessive.*"

2 Dillon at 59 (emphasis added). *See also, Baldwin v. Kingston,* 247 F. 163 (D.N.J. 1918), *aff'd,* 257 F. 554 (3d Cir.1919).

*In re Chappel,* 243 F.Supp. 417 (S.D.Cal., 1965), upon which the Defendants rely, is

not to the contrary. Here, the Bankruptcy Referee ordered the bankrupt's wife to turn over to the bankruptcy trustee all property transferred to her pursuant to a Property Settlement agreement incorporated into an Interlocutory Decree of Divorce. Under the agreement, the wife received more than one-half of the community property, and expressly waived any claim to alimony and support. Turnover was based upon findings that the transfer(s) was (were) avoidable under 11 U.S.C. 107(d)(2) [Bankruptcy Act], Section 67(d)(2) of the [Bankruptcy Act], the predecessor of Section 548(a)(2)(B) of the Bankruptcy Code.

In remanding the cause to the Bankruptcy Referee, the District Court concluded that the transfer of one-half of the community property was supported by "fair consideration" (now, "reasonably equivalent value") as a matter of law; and that a rebuttable presumption was created that "the waiver of alimony was fair consideration for the excess over 50% of the total value of the community property awarded the wife." Id. at 420. The conclusion was premised on the findings that the time for appeal of the interlocutory decree had expired, that the decree was therefor binding on the parties, and that the decree finally disposed of the community property and the husband's obligation to support his wife by way of alimony. The Bankruptcy Referee was instructed to determine, on remand, whether the wife's waiver of alimony constituted fair consideration, within the meaning of Section 67(d)(2) of the Act, for the transfer to her of the excess over one-half of the total value of the community property under the agreement.

Thus, the few cases on point certainly indicate that transfers made pursuant to a divorce decree, separation agreement, or property settlement are not unassailable by a Trustee in Bankruptcy. The principles of res judicata or collateral estoppel are not even suggested by those cases as a bar to such an attack, reasonably so since a divorcing couple's creditors are not typically parties to the dissolution proceeding. *Glass-*

*cock v. Citizens Natl. Bank,* 553 S.W.2d 411, 413 (Tex.Civ.App., 1977).

. . . .

The Trustee contends, also, that were a (valid enforceable) property settlement agreement unassailable under Section 548(a)(2)(B), as Defendants contend, the agreement in evidence here would not enjoy that immunity because it is not valid and enforceable under Missouri law: because it was not specifically or expressly incorporated by the Dissolution Court in its decree, and because the decree did not specifically find or recite that the agreement was not unconscionable. See 452.325 V.A.M.S., supra.

Section 452.325 provides that a (written) separation agreement is *binding on the Dissolution Court* (except in respect of custody, support and visitation of children) unless the agreement is unconscionable; that if the Court finds it not to be unconscionable, its terms shall be set forth in the decree unless the agreement itself provides against expressing the terms in the decree, in which event the decree itself shall state the remaining terms (exclusive of child support, custody and visitation) are not unconscionable.

In the case sub judice, the Dissolution Court did *not* incorporate the settlement agreement in its dissolution decree, nor did it find its provisions not to be unconscionable.

As a result, the agreement is not binding *on the Dissolution Court.* Nevertheless, I cannot find or conclude—nor do I think it necessary to find or conclude, in view of the precedents previously noted—that the agreement is not binding upon the parties, under Missouri law, at least until the Dissolution Court were, by proper application, asked to make some other disposition of the real estate (than that contemplated by the agreement and heretofore given effect by the parties), an event that has not as yet taken place. (None of the competing parties has called to this Court's attention any Missouri precedent which invalidates the agreement as between the parties.) The precedents tell us that a decree, or binding

agreement, does not preclude attack by a bankruptcy Trustee if the elements of Section 548 are present.

■ Thus, the substantial issue is, the agreement being assumedly valid as between the parties, whether or not the Debtor received "reasonably equivalent value", under 11 U.S.C. § 548, in exchange for his transfer of his interest in the real estate and in other items of marital property.

"Value" is defined, for purposes of the Section, as "property, or satisfaction or securing of a present or antecedent debt of the debtor ..." 11 U.S.C. § 548(d)(2)(A).

Under the settlement agreement, Debtor received his personal belongings, valued at $100, and the 1978 Ford Thunderbird, valued at $2,900. Kathleen, under the agreement, received her personal belongings (to which no value was ascribed), a 1976 Buick Regal, valued at $1,000, and the equity in all of their household goods and furnishings. These goods were valued at $2,000, but encumbered for $600. Kathleen also promised, under the agreement to pay the secured debt, $2,300, against the Thunderbird. She did so pay that debt. In addition, Kathleen received the real estate, having an equity of approximately $26,000 at the time.

Thus, she received property having a net value of $26,100 (exclusive of the value of her personal belongings), as compared to property having a net value of $2,900 (exclusive of his personal belongings) which Debtor received under the agreement.

Thus, the *property* received by the Debtor, under the agreement, does not have a value the reasonable equivalent of the value of the property received by Kathleen.

By the precedents previously reviewed, the waiver of alimony or maintenance by a spouse *may* constitute the "satisfaction of a present debt of the debtor" within the meaning of the Code's definition of value.

Here, neither party to the Dissolution Cause, received an award of maintenance. The decree specifically provides "that maintenance is not granted", and the parties'

agreement specifically proclaims "no maintenance to either Party".

The agreement to waive was of little or no value to either party, as neither was entitled to alimony, maintenance or support under Missouri law as it now exists and existed at the time of dissolution of the marriage. Under that law, maintenance to a spouse will be awarded only if the spouse seeking maintenance

"(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

452.335 V.A.M.S., subd. 1, para. 1.

At the time of dissolution, Debtor and Kathleen were on a fairly equal financial basis, each earning sufficient income to provide for his/her own support. Debtor was earning approximately $18,000 a year. Kathleen was earning approximately $17,000 a year. Kathleen was awarded custody of their minor child, and Debtor was ordered by the decree to pay Kathleen $50 a week for child support. By the agreement, the Debtor promised to "assume" all medical and dental expenses for the child over and above medical coverage.

Kathleen had been employed, at the time of the trial sub judice, by her present employer, for 8 years, so that she had been employed, at the time of the dissolution hearing, for 5 years by that employer. Thus, the minor child's "condition or circumstances" had not prevented Kathleen's (the custodial parent's) employment outside the home for a substantial period of time, and the evidence adduced sub judice does not reflect that Kathleen would not, in reasonable contemplation, be able to continue that outside-the-home employment.

Accordingly, Kathleen was not entitled, under Missouri law then existing, to an award of maintenance; and her waiver of maintenance, in the agreement, cannot be found to constitute the waiver of a valuable property interest, so that the Debtor's agreement to convey his interest in the real estate, and his conveyance in consummation of the agreement, cannot be found to be in satisfaction of a present debt within the meaning of "value" as defined by the Bankruptcy Code.

. . . .

Defendants Vanek did not take an interest in the real estate for value.

. . . .

Finally, it should be pointed out that Debtor, at the time of his transfer (assailed by the Trustee), owed at least one debt, to South Side National Bank (a non-FHA loan), as to which Kathleen was not obligated. (This debt is scheduled for $846 in Debtor's bankruptcy schedules. It is listed at $1,240.80 in his financial statement filed in the Dissolution Cause.) He may have owed others, also, that Kathleen did not owe: for example, he lists Shell Oil Co. ($117.41), Shoppers Charge ($180.62), Montgomery Ward ($216.20), and St. Anthony's Credit Union ($4,400), as creditors, on the financial statement he filed in the Dissolution Cause; Kathleen did not list any of these creditors/debts upon her financial statement. (Debtor testified, however, during the trial of the cause sub judice, that Kathleen may be obligated on the Credit Union debt, upon her signature of notes when his original debt was refinanced.)

Debtor lists three other debts in his bankruptcy schedules which were not listed by him or Kathleen on their financial statements filed in the Dissolution Cause. At least two of those debts (U.S. Gov't., V.A., College Tuition, 1976, $489.15; and Prudential Insur. Co., Loan, Nov., 1980, $600) would seem to have been incurred prior to the dissolution. (The third is listed as a $70 debt, for counseling, incurred in 1980.)

The parties did not present the issue evidentially: the issue whether Debtor, at the time of the transfer, owed debts which Kathleen did not owe, the satisfaction of which would be prejudiced by a transfer for something less than reasonably equivalent

value; and did not address the issue in their briefs.

In any event, Debtor owed at least one debt, at the time of the assailed transfer, which Kathleen did not owe, and owed the creditor holding that debt (albeit a smaller sum) at bankruptcy.

. . . .

Accordingly, the Trustee is entitled to avoid, as a transfer voidable under 11 U.S.C. 548(a)(2)(A) and (B)(i), Debtor's transfer of an undivided one-half interest in the real estate described in the Complaint.