**In the Matter of Peter D. OTTAVIANO, Debtor.**

**Bankruptcy No. 2–85–00011.**
**Motion No. 2–86–0084M.**

United States Bankruptcy Court,
D. Connecticut.

July 11, 1986.

Lewis Rabinovitz, Sorokin & Sorokin, P.C., Hartford, Conn., for movant, Barbara J. Ottaviano.

Joseph Neiman, Neiman Legal Services, Newington, Conn., for debtor.

Gilbert L. Rosenbaum, Hartford, Conn., Trustee, pro se.

## MEMORANDUM OF DECISION ON MOTION FOR DETERMINATION OF SECURED STATUS AND RELIEF FROM STAY

ROBERT L. KRECHEVSKY, Chief Judge.

### ISSUE

The issue presented in this contested matter is whether a notice of lis pendens filed by Barbara J. Ottaviano (movant) at the commencement of a marriage dissolution action against property owned by the debtor constitutes a fraudulent transfer. No evidentiary hearing has been held and the following facts are based upon the case file and a stipulation of facts submitted by the parties.

### BACKGROUND

Peter D. Ottaviano (debtor) filed a chapter 13 petition on January 8, 1985, and Gilbert L. Rosenbaum became trustee of the debtor's estate. On January 18, 1985, at the request of the debtor and with the consent of the movant and the trustee, this court modified the automatic stay imposed by 11 U.S.C. § 362 to allow the debtor and the movant to conclude their marriage dissolution action then pending in Connecticut Superior Court. The order permitted "the entry of orders by the State Court in the Dissolution Action affecting property that may be property of the bankruptcy estate", but stayed "enforcement of any orders entered in the Dissolution Action affecting property of the estate, other than orders dissolving Debtor's marriage, or awarding custody of Debtor's children ... until further order of this Court determining the enforceability of said orders against property that may be property of the estate."

The movant had commenced the marriage dissolution action on January 11, 1984. At that time, she and the debtor each owned an undivided one-half interest in their family residence known as 27 Pawtucket Avenue, Wethersfield, Connecticut (residence). In her action the movant sought, *inter alia*, alimony, a division of property and a transfer to her of the residence. Pursuant to Conn.Gen.Stat. § 46b–80,[1] she recorded, on January 11, 1984, a notice of lis pendens on the Wethersfield Land Records referring to the residence. The parties have stipulated that on that date the residence had a fair market value of $81,000.00, and was subject to mortgages with unpaid balances totaling $15,905.54. The debtor's one-half interest, accordingly, was worth $32,547.23. It is further stipulated that on that date the debtor would have been insolvent without his ownership of his interest in the residence.

After this court entered its order modifying the automatic stay, the movant and the debtor proceeded to judgment in the marriage dissolution action. On November 22, 1985, after a contested hearing on the movant's complaint and the debtor's cross-com-

---

1. That statute provides in relevant part:

   § 46b–80. *Prejudgment remedies available; lis pendens; notice; effect*

   (a) The following procedures shall be available to secure the financial interests of either spouse in [a marriage dissolution action]: ...
   (2) at any time after the service of such a complaint, if either party claims an interest in real property in which the other party has an interest, either spouse may cause a notice of lis pendens to be recorded in the office of the town clerk of each town in which is located real property in which the other spouse has an interest. ... Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the complaint. Each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained ... shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the complaint.

plaint, the Superior Court dissolved the marriage and awarded to the movant "as lump sum alimony and in lieu of periodic alimony ... all right, title and interest in ... the family residence ..., to be hers absolutely."[2] The movant was ordered to pay all mortgages on the residence.

On March 12, 1986, the movant filed the present motion for a determination of her status as a secured party, and for relief from the § 362 stay in order to enforce the Superior Court marriage dissolution decree. She contends that the decree relates back to the lis pendens filed on January 11, 1984, making her a secured creditor with a valid lien. The trustee denies the lis pendens can act as a lien, but contends that if it does, the enforcement at this time of the lis pendens would constitute a fraudulent transfer under § 548[3] of the Bankruptcy Code. The debtor supports the trustee's position.

### DISCUSSION

#### A.

The significance and effect of the lis pendens filed by the movant are determined by state, not federal, law. "[A]lthough the trustee's status is conferred by federal bankruptcy law, his rights vis-a-vis other parties are to be determined by reference to state law. This point is well settled." *Maine Nat'l Bank v. Morse (In re Morse)*, 30 B.R. 52, 54 (Bankr. 1st Cir.1983) (citations omitted). It is clear from the language of Conn.Gen. Stat. § 46b–80(a) that its purpose is to afford a prejudgment remedy to a spouse in a marriage dissolution proceeding by authorizing the filing of a lis pendens, which thereafter is to be granted priority over subsequent transfers and encumbrances if the state court awards the property affected to the filing spouse. Thus, the lis pendens, if otherwise valid, would have the same effect and purpose as an attachment lien upon the entry of a final judgment. *Kukanskis v. Griffith*, 180 Conn. 501, 507, 430 A.2d 21 (1980) ("[t]he doctrine underlying lis pendens is that a person who deals with property while it is in litigation does so at his peril; thereby preventing the effective disposition of the property") (citations omitted). *Cf. Hartford Provision Co. v. United States*, 579 F.2d 7, 9–10 (2d Cir.1978) (the Connecticut attachment procedure "permits the plaintiff to obtain security for the satisfaction of any judgment which he may finally recover. The attached real estate is held to respond to the final judgment or decree.") (citations omitted).

#### B.

In determining whether the filing of the notice of lis pendens constitutes a

---

**2.** Conn.Gen.Stat. § 46b–82 provides:

> *§ 46b–82. Alimony*
> At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b–81 [providing for property awards]. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b–51, shall consider the length of the marriage, the causes for the annulment, the dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b–81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment.

**3.** That section provides in relevant part:

> *§ 548. Fraudulent transfers and obligations*
> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor ...
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

fraudulent transfer under § 548, the first question is whether that filing is a "transfer of an interest of the debtor in property". The Bankruptcy Code defines "transfer" in broad terms. " '[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property...." 11 U.S.C. § 101(48). The movant's filing of a notice of lis pendens constitutes an involuntary conditional disposition of the debtor's interest in the residence, in light of the discussion in Part A., *supra.*

### C.

To find whether the transfer was made within one year of the filing of the debtor's petition, § 548(d)(1) provides that:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee....

Conn.Gen.Stat. § 46b–80 provides that upon filing the notice of lis pendens, "[e]ach person whose conveyance or encumbrance is subsequently executed or subsequently recorded ... shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice...." The transfer in this proceeding was made, accordingly, when the movant recorded the notice of lis pendens on January 11, 1984. The debtor filed his chapter 13 petition on January 8, 1985. The transfer was made within one year of the filing of the petition.

### D.

The parties have stipulated that on the date of the recording of the lis pendens, the debtor "was not insolvent but would have been insolvent if he did not own a half interest in the family residence on that date." I assume this stipulation is intended to satisfy the portion of § 548(a)(2)(B)(i) which requires that the debtor be "insolvent on the date that such transfer was made ..., or [become] insolvent as a result of such transfer...." The only issue, therefore, that remains to be resolved is whether the debtor "received less than a reasonably equivalent value in exchange for [the] transfer...." Section 548(a)(2)(A).[4]

While the number of authorities is limited, they generally hold that the release of the debtor from future alimony or support obligations[5] can constitute reasonably equivalent value for property transferred in exchange. *See Gray v. Snyder,* 704 F.2d 709 (4th Cir.1983); *Dixon Lumber Co. v. Peacock,* 217 Cal. 415, 19 P.2d 233 (1933); *Mitchell v. Wilmington Trust Co.,* 449 A.2d 1055 (Del.Ch.1982); *Trueman Fertilizer Co. v. Stephan,* 111 Fla. 207, 194 So. 349 (1933); *Page v. Corn Exch. Nat'l Bank & Trust Co.,* 314 Pa. 411, 171 A. 560 (1934), cited with approval in 4 *Collier on Bankruptcy* ¶ 548.09 at 548–103 (L. King 15th

---

**4.** Value, as defined in § 548(d)(2)(A), "means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."

**5.** The type of claim held by the movant does not represent an allowable claim in the debtor's estate. Section 502(b)(5) of the Bankruptcy Code prohibits the allowance of a claim that "is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title". Section 523(a)(5) excepts from discharge, *inter alia,* any debt to a spouse or former spouse for alimony to such spouse in connection with a divorce decree. Section 506(d)(1), entitled "Determination of Secured Status", under which the movant apparently brings her motion, provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—(1) such claim was disallowed only under section 502(b)(5)".

Putting all these sections together, it appears Congress intended that a spouse's prepetition lien to secure a nonallowable alimony award may *not* be avoided. I assume § 506(d)(1) was not intended to validate a lien that otherwise might be avoided under other provisions of the Bankruptcy Code, such as § 548.

ed. 1984) ("Cancellation of future indebtedness to accrue under a court order for support has been held correctly to be a good and valuable consideration for a transfer in a case arising under the Uniform [Fraudulent Conveyance] Act"). The critical inquiry is whether the obligation from which the debtor was released was reasonably equivalent in value to the property transferred to his spouse. *Goldstein v. Lange (In re Lange)*, 35 B.R. 579, 586 (Bankr.E.D.Mo.1983).

The value of what was received by the debtor in exchange for transfer of the debtor's property is, in this circuit, generally a question of fact. *Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir.1979).[6] One court has held that a release from future support obligations creates a rebuttable presumption that fair consideration was furnished, *In re Chappel*, 243 F.Supp. 417, 420 (S.D.Cal.1965); another has suggested that "it could be argued" that such a release could give rise to a conclusive presumption of fair consideration, *Britt v. Damson*, 334 F.2d 896, 903 n. 13 (9th Cir. 1964). Even without the aid of a presumption, I find, after considering the Superior Court memorandum of decision in the marriage dissolution action, that the debtor's release from the payment of future periodic alimony constitutes reasonably equivalent value.

In the Ottaviano action, the Superior Court dealt with a marriage of seventeen years duration involving two minor children. The court found both the debtor and the movant to be in good health and gainfully employed. It further found that the debtor's employer

> provided a well reasoned projection of the [debtor's] projected earnings which project [sic] his earnings to the $40,000 area in 1986 up to the $60,000 area in

1989. His future appears to be financially bright.... In comparison to the [debtor], the [movant] has a very limited ability to acquire capital assets in the future. Her income production will be modest. She will bear for the next few years the main responsibilities for day-to-day care of the children.... [T]he court regards [movant's] future financial security as one that requires assistance as a consequence of ... [, *inter alia*,] the major responsibility for the breakup of the marriage being assigned to the [debtor]....

The Superior Court ruling specifically states that the transfer to movant of the debtor's interest in the residence is in lieu of periodic alimony. The debtor's interest in the residence was worth approximately $32,000.00, and I find that the debtor received reasonably equivalent value in the transfer of the residence to movant.[7] The debtor's and the trustee's contention that the lis pendens filed by the movant may be avoided under § 548 as a fraudulent transfer has not been sustained.

## CONCLUSION

In view of the foregoing, the court determines that the notice of lis pendens filed by Barbara J. Ottaviano on January 11, 1984 in Volume 339 at page 921 of the Wethersfield Land Records is valid for the purposes of having the judgment dated November 22, 1985, rendered in the Superior Court for the Judicial District of Hartford/New Britain at New Britain in Proceeding No. 415604, *Ottaviano v. Ottaviano*, relate back thereto. The stay imposed by 11 U.S.C. § 362(a) is modified to the extent necessary to permit Barbara J. Ottaviano to enforce said judgment.

---

6. The *Klein* case concerned a fraudulent transfer under § 67d of The Bankruptcy Act of 1898, which referred to "fair consideration." Current law refers to "reasonably equivalent value." I believe that the difference in language between "reasonably equivalent value" and "fair consideration" would not change this portion of the *Klein* holding.

7. The debtor's confirmed chapter 13 plan provides for 100 percent payment to all of his creditors, with an additional provision that all creditors will receive eight percent interest on their claims "if it shall be established, after debtor's pending divorce proceeding is finalized, that he was 'solvent' at the time of filing [his] petition".

343

This memorandum shall constitute Findings of Fact and Conclusions of Law as required by Bankr. R. 7052.