In re FOUR CORNERS ENTERPRISES, INC., Bankrupt.

M. Wesley HALL, Trustee in Bankruptcy for Four Corners Enterprises, Inc., Plaintiff,

v.

August M. MANGONI, Defendant.

Bankruptcy No. 77–30820.

United States Bankruptcy Court, M. D. Tennessee.

Jan. 6, 1982.

W. Henry Haile, for trustee.

M. Wesley Hall, trustee.

James H. Harris, III, Nashville, Tenn., for defendant.

### ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was commenced by the trustee for the debtor corporation, Four Corners Enterprises, to deter-mine the personal liability of the debtor's sole shareholder and executive officer, August Mangoni, for corporate debts.

An involuntary petition was filed against the debtor corporation on May 26, 1977. Four Corners Enterprises was adjudged a bankrupt under the former Bankruptcy Act on June 30, 1977. On that same day, M. Wesley Hall, plaintiff in the present case, was appointed receiver to take charge of the property of the debtor. Mr. Hall was appointed trustee of the debtor's estate on August 23, 1977. The debtor was granted a discharge on April 9, 1978.

During the course of these bankruptcy proceedings, General Park Fields and Joan S. Fields, creditors and former majority shareholders of the debtor corporation, instituted a civil action in the United States District Court for the Middle District of Tennessee against August Mangoni. Henry Haile represented the Fields in this action. The Fields sought to recover $128,875.00, plus interest, on the basis of an alleged promissory note (or, in the alternative, written contract) executed by Mangoni. The note had been given to the Fields in exchange for their stock in the debtor corporation. In his defense, Mangoni asserted that the only party obligated to the Fields on the note was the debtor corporation. To support this contention, Mangoni introduced a document dated December 11, 1974, and signed by Mangoni and General Fields which stated that Mangoni was released from all personal liability on the unpaid purchase price. In order to avoid the effect of this document, the Fields contended that Mangoni had ignored the corporate structure and thus was personally liable on the note. District Judge L. Clure Morton rejected the Fields' arguments and dismissed the case. *Fields v. Mangoni*, No. 77–3495–NA–CV (M.D.Tenn. November 29, 1979).

On February 12, 1980, the court granted the trustee's motion to employ Henry Haile as attorney for the trustee to bring this civil action against August Mangoni. The complaint of the trustee was filed on April 2, 1980. The complaint sought to hold August Mangoni personally liable for corpo-

rate debts on the grounds that (1) he had operated the corporation as his alter ego and (2) his actions had violated Tenn.Code Ann. § 48–513 and thus rendered him personally liable to the creditors of the corporation under Tenn.Code Ann. § 48–815(1)(b)(ii). The defendant's answer, filed on July 23, 1980, denied these allegations.

The matter now is before this court on the defendant's motion to dismiss pursuant to Rules 12(b)(1) and (7) of the Federal Rules of Civil Procedure. In this motion the defendant alleges that (1) the plaintiff is collaterally estopped from asserting its claim by the federal district court's decision in *Fields v. Mangoni*, No. 77–3495–NA–CV (M.D.Tenn., November 29, 1979) and (2) the plaintiff has failed to join General Fields and Joan S. Fields as indispensable party defendants.

The trustee has filed a response to the defendants motion to dismiss, contending that the defense of collateral estoppel is waived since it was not pleaded by the plaintiff and, in the alternative, that collateral estoppel does not apply in this case.

■ The trustee asserts that the defendant's failure to plead the defense of collateral estoppel constitutes a waiver of that defense. Several courts have held that an affirmative defense such as collateral estoppel must be affirmatively pleaded.[1] *See, e.g., Zeligson v. Hartman-Blair, Inc.*, 135 F.2d 874, 876 (10th Cir. 1943); *Cohen v. United States*, 129 F.2d 733, 736 (8th Cir. 1942). The better reasoned rule, however, is that affirmative defenses may be raised either by a motion to dismiss or in the answer. *See, e.g., Williams v. Murdoch*, 330 F.2d 745, 749–751 (3rd Cir. 1964); *Hartmann v. Time, Inc.*, 166 F.2d 127, 138 (3rd Cir. 1947); *Connelly Foundation v. School Dist. of Haverford Tp.*, 326 F.Supp. 241, 243 (E.D.Pa.1971), *aff'd* 461 F.2d 495, 496 (3rd Cir. 1972); *Katz v. State of Connecticut*, 307 F.Supp. 480, 483 (D.Conn.1969); *Smith v. Pittsburgh Gage and Supply Co.*, 270 F.Supp. 192, 197 (W.D.Pa.1967), *rev'd on*

*other grounds* 388 F.2d 983 (3rd Cir. 1968). A party should not be denied the opportunity to be heard on an issue merely because of a technicality in form. As one commentator observed: "In situations such as these, the courts appear to be wise in overlooking the formal distinctions between affirmative defenses and motions, which have their primary justification in history rather than logic." 5 Wright and Miller, Federal Practice and Procedure Civil § 1277 (1971).

■ The issue, therefore, is whether collateral estoppel precludes the plaintiff from asserting his claim in this court. A party asserting collateral estoppel must establish that the issue to be resolved is identical to an issue decided in prior litigation, that the issue was actually litigated, and that the decision on the issue was necessary to the prior judgment. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981); *Matter of Ross*, 602 F.2d 604, 608 (3rd Cir. 1979); *Merrill v. Walter E. Heller and Company of Alabama*, 594 F.2d 1064, 1067 (5th Cir. 1979). Once these requirements are met, collateral estoppel precludes the relitigation of factual issues. *Spilman*, 656 F.2d at 228; *Merrill*, 594 F.2d at 1067.

Collateral estoppel also has traditionally required proof of mutuality—the same parties or their privies had to be involved in the prior litigation. *See, e.g., Grantham v. McGraw-Edison Company*, 444 F.2d 210, 213 (7th Cir. 1971); *Harrison v. Bloomfield Building Industries, Inc.*, 435 F.2d 1192, 1195 (6th Cir. 1970). Federal courts have recently expressed a growing disenchantment with the antiquated mutuality doctrine. *See, e.g., Spilman*, 656 F.2d at 228; *Oldham v. Pritchett*, 599 F.2d 274, 278–279 (8th Cir. 1979); *Butler v. Stover Brothers Trucking Company*, 546 F.2d 544, 550–551 (7th Cir. 1977); *Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 117, 122–123 (5th Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); *Rachal v. Hill*, 435 F.2d 59, 62 (5th Cir. 1970), *cert. denied*, 403 U.S. 904, 91

---

1. The trustee's complaint mistakenly refers to Tenn.Code Ann. § 48–815(1)(b)(ii) as Tenn. Code Ann. § 48–513(b)(ii).

S.Ct. 2203, 29 L.Ed.2d 680 (1971); *Aiello v. City of Wilmington*, 470 F.Supp. 414, 422 (D.Del.1979). *See also* 1B Moore's Federal Practice ¶ 0.412[1] (2d ed. 1980). The United States Supreme Court sounded the final death knell for the doctrine of mutuality in *Allen v. McCurry*, 449 U.S. 90, 94–96, 101 S.Ct. 411, 414–416, 66 L.Ed.2d 308, 313–314 (1980). In an extensive review of the concept of collateral estoppel, the Court explained:

> ". . . . Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973]. As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Id.*, at 153–54, 59 L.Ed.2d 210, 99 S.Ct. 970 [973–74].

> In recent years, this Court has reaffirmed the benefits of collateral estoppel in particular, finding the policies underlying it to apply in contexts not formerly recognized at common law. *Thus, the Court has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal court suits.* Blonder-Tongue Laboratories, Inc. v. University of Illinois, 402 U.S. 313, 28 L.Ed.2d 788, 91 S.Ct. 1434, and has allowed a litigant who was not a party to a federal case to use collateral estoppel 'offensively' in a new federal suit against the party who lost on the decided issue in the first case, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 58 L.Ed.2d 552, 99 S.Ct. 645. *But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case. Montana v. United States, supra,* 440 U.S. at 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973]; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. [313] at 328–329, 28 L.Ed.2d 788, 91 S.Ct. 1434 [at 1442–1443]." (Emphasis added.)

With the abrogation of the mutuality doctrine, the defendant asserting collateral estoppel in this case need only establish that the same issue was actually litigated and was necessary to the decision in the earlier case. Implicit in this proof is a demonstration that the trustee had a "full and fair opportunity" to litigate the issue in the prior proceeding. The defendant has met this burden of proof. The issue in question was fully litigated and resolved in the federal district court proceeding. After a hearing, Judge Morton found as follows:

> "The second ground of attack is that Mangoni ignored the corporate structure, and in effect, operated the business of Four Corners as an individual proprietorship. The principal basis for this attack is that the corporate charter, minute books and copies of minutes cannot be found. This losing of books and papers of the corporation is not a material issue as to corporate existence. There is no credible evidence that enables plaintiffs to carry the burden of proof of this assertion. Likewise, there is no credible evidence that Mangoni did operate the corporate affairs as an individual proprietorship. After 1974, he did use some of his individual funds to pay corporate debts. Insofar as this record reveals, the corporation continued to deal with the world at large and with its creditors in a legitimate corporate manner. This ground must fail."

*Fields v. Mangoni*, No. 77–3495–NA–CV (M.D.Tenn. November 29, 1979).[2]

---

**2.** Because Judge Morton prefaced his decision with the words "insofar as this record reveals," the trustee contends the issue in question was not fully litigated in the federal district court proceedings. The "actually litigated" requirement of collateral estoppel, however, does not require the issue to have been thoroughly litigated at the prior proceeding. It is enough if

The trustee was well aware of these proceedings and made no effort to intervene as an interested party. The trustee's inaction inveighs against now allowing him to relitigate the same issue previously decided in the federal district court proceeding. *See generally, Paradise v. Vogtlandische Maschinen-Fabrik,* 99 F.2d 53, 55 (3rd Cir. 1938). *See also* 1B Moore's Federal Practice ¶ 0.419[3.–6] (2d ed. 1980). Furthermore, the trustee has employed as attorney to pursue this action the same attorney who represented the Fields in their suit against the defendant in federal district court. Under these circumstances, the trustee cannot complain that he lacked a full and fair opportunity to litigate the issue in question at the federal district court proceeding. Collateral estoppel thus precludes the trustee from relitigating this issue.

Judge Morton did not, however, consider the issue, now asserted by the trustee, that the defendant's actions violated Tenn. Code Ann. § 48–513 and thus rendered him personally liable to the creditors of the debtor corporation under Tenn.Code Ann. § 48–815(1)(b)(ii).[3] This issue is therefore not precluded by collateral estoppel and may be pursued by the trustee in this court.

Lastly, the defendant seeks dismissal of this action because the trustee has failed to join the Fields as indispensable parties. While the Court does not have sufficient proof before it to conclude the Fields were directors at the time of the alleged violation of § 48–513 of the Tennessee Code, it certainly appears to be the case, as they were at that time majority shareholders. With this proof, the Court would have no choice but to require they be joined as indispensable parties pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. However, in absence of any proof of the Fields' involvement, the motion to dismiss for failure to join them will be denied.

The defendant's motion to dismiss is granted in part and denied in part.

---

the parties to the original action disputed the issue and the trier of fact resolved it. *Continental Can Co. v. Marshall,* 603 F.2d 590, 596 (7th Cir. 1979). *See also* 1B Moore's Federal Practice ¶ 0.441[2] (2nd ed. 1980). This requirement was clearly met in the present case. Judge Morton rendered his decision only after a full hearing in which both parties had the opportunity to submit proof on their behalf.

3. Tenn.Code Ann. § 48–513 provides:
"... . (1) A corporation shall have the right to purchase, take, receive or otherwise acquire, hold, own, pledge, transfer or otherwise dispose of its own shares; but purchases of its own shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned surplus available therefor, and, if the charter so permits or with the affirmative vote of the holders of a majority of all the outstanding shares entitled to vote thereon, to the extent of unreserved and unrestricted capital surplus available therefor.

(2) To the extent that earned surplus or capital surplus is used as the measure of the corporation's right to purchase its own shares, such surplus shall be restricted so long as such shares are held as treasury shares, and upon the disposition or cancellation of any such shares the restrictions shall be removed pro tanto.

(3) Notwithstanding the foregoing limitations, a corporation may purchase or otherwise acquire its own shares for the purpose of:
(a) Eliminating fractional shares;
(b) Collecting or compromising indebtedness to the corporation;
(c) Paying dissenting shareholders entitled to payment for their shares under §§ 48–909–48–919;
(d) Effecting, subject to the provisions of subsection (4) of this section and §§ 48–514 and 48–515, the retirement of its callable or redeemable shares by call or redemption or by purchase at a price not to exceed the call price fixed by the charter.
(4) No purchase of or payment for its own shares shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent ... .."
Tenn.Code Ann. § 48–815(1)(b)(ii) provides:
"... . (1) Directors of a corporation who vote for or concur in any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of its creditors, shareholders or members to the extent of any injuries suffered by such persons, respectively, as the result of such action:
\* \* \* \* \* \*
(b) If a corporation for profit:
\* \* \* \* \* \*
(ii) The purchase of the shares of the corporation to the extent that it is contrary to the provisions of § 48–513; ... ."