**In re Walter R. FALK, Debtor.**

**Walter R. FALK, Plaintiff,**

**v.**

**Elaine S. HECKER, Defendant.**

**Bankruptcy No. 4–87–3115.**
**Adv. No. 4–87–228.**

United States Bankruptcy Court,
D. Minnesota.

July 27, 1988.

William I. Kampf, Fredrikson & Byron, Minneapolis, Minn., for plaintiff.

Scott A. Johnson, Robins, Kaplan, Miller & Ciresa, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on the defendant's motion for summary judgment. William I. Kampf appeared for the plaintiff, Walter R. Falk. Scott A. Johnson appeared for the defendant, Elaine S. Hecker. Based on the affidavits, memoranda of counsel, and the file of this proceeding, I make the following:

## MEMORANDUM ORDER

Walter R. Falk is the debtor-in-possession in a chapter 11 case filed on September 14, 1987. Falk also filed this adversary proceeding on September 14, 1987, alleging that certain payments made to Elaine S. Hecker as part of a state court dissolution judgment and decree are avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a)(2). Hecker now moves for summary judgment. This court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

### I.

Hecker [1] and Falk were married on April 28, 1963. They had one child during their marriage, Wade C. Falk born January 25, 1974. In June of 1985, Elaine petitioned the Hennepin County District Court for dissolution of their marriage.

After over one year of arms-length negotiations, the parties reached a settlement regarding the division of marital assets, support, maintenance, and other related matters. On September 30, 1986, the district court entered its Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree. Paragraphs 9 and 10 of the Conclusions of Law distributed the marital property as follows:

9. *Property Settlement to Petitioner.* Petitioner is awarded as her full interest and share in the property of the parties hereto, free and clear of any interest therein on the part of respondent, and as a full and final property settlement, the exclusive title to and ownership of the following described personal property:

9.1 *Cash Settlement.* The sum of $1,300,000.00 in cash to be paid by respondent to petitioner in the following manner: $750,000 upon entry of this Decree and $550,000 on or before December 31, 1986. The latter sum will be secured by an irrevocable letter of credit.

9.2 *Automobile.* A certain Cadillac automobile currently in the possession of petitioner.

9.3 *Additional Cash Settlement.* The sum of $20,000 to be paid by respondent to petitioner at the time of the entry of this Decree.

9.4 *Household Goods and Furnishings.* All of the household goods and furnishings in her possession.

9.5 *Other Personal Property.* All of petitioner's separate bank accounts, insurance policies, cash, and any and all other personal property owned by and/or in the possession or under the control of petitioner, regardless of whether such property is specifically referred to hereinabove.

10. *Property Settlement to Respondent.* Respondent is awarded as his full interest and share in the property of the parties hereto, free and clear of any interest therein on the part of petitioner, and as a full and final property settlement, the exclusive title to and ownership of the following described real and personal property:

10.1 *Homestead.* All right, title and interest in and to the homestead of the parties located at 16860 Creek Ridge

---

1. The defendant's name was Elaine Falk when this proceeding was commenced. However, she has remarried and changed her name to Elaine Hecker.

Trail, Minnetonka, Henne (sic) County, Minnesota 55345, legally described as:

Lots 15 and 16, Block 1, Creek Ridge, according to the map or plat thereof on file and of record in the office of the County Recorder in and for Hennepin County, Minnesota,

subject to all encumbrances thereon which he shall be responsible for and pay.

10.2 *Vero Beach Lots.* Any and all interest of the parties in and to two undeveloped lots commonly known as the Moorings in Vero Beach, Indian River County, Florida, legally described as:

Lot 41, The Moorings, Unit No. 5 according to the Plat thereof recorded in the office of the clerk of the Circuit Court of Indian River County, Florida, in Plat Book O Pages 98, 98A, 98B, 98C and 98D, Public Records of Indian River County

and

Lot 42, The Moorings, Unit No. 5 according to the Plat thereof recorded in the office of the clerk of the Circuit Court of Indian River County, Florida, in Plat Book O Pages 98, 98A, 98B, 98C and 98D, Public Records of Indian River County.

10.3 *Vero Beach Condominium No. 103.* Any and all interest of the parties in and to a condominium located at Vero Beach, Indian River County, Florida, legally described as follows:

A Condominium Parcel described as Apartment No. # 103 of the RIOMAR SANDS, a Condominium, according to the Declaration of Condominium dated July 7, 1981 and recorded in Official Record Book 626, pages 466 through 527, inclusive, of the Public Records of Indian River County, Florida, TO-GETHER with all of the appurtenances thereto all according to said Declaration of Condominium and Exhibits attached thereto, TOGETHER with the use of Parking Spaces Nos. 22 and 53 and Storage Space No. 2, as located on the land described in Exhibit "A" of said Declaration of Condominium.

10.4 *Vero Beach Condominium No. 105.* Any and all interest of the parties in and to a condominium located at Vero Beach, Indian River County, Florida, legally described as follows:

A Condominium Parcel described as Apartment No. # 105 of RIOMAR SANDS, a Condominium, according to the Declaration of Condominium dated July 7, 1981 and recorded in Official Record Book 626, pages 466 through 527, inclusive, of the Public Records of Indian River County, Florida, TO-GETHER with all of the appurtenances thereto, all according to said Declaration of Condominium and Exhibits attached thereto; TOGETHER with the use of Parking Space No. 48 and Storage Space No. 3 as located on the land described in Exhibit "A" of said Declaration of Condominium.

10.5 *Warehouse.* Any and all interest of the parties in and to a certain warehouse located at Vero Beach, Indian River County, Florida, legally described as follows:

The East one-half of the following described property: The South Five Acres of the North one-half of the Southwest one-quarter of the Northeast one-quarter less the East 700 feet and less rights of ways for U.S. Highway No. 1, Old Dixie Highway and Florida East Coast Railroad, Section 10, Township 32 South, Range 39 East, said land lying and being in Indian River County, Florida.

10.6 *Contents of Condominiums.* All of the household goods, furniture, furnishings, dishes, linens, appliances and all other tangible household and personal property located in and about the condominiums referred to in paragraphs 10.3 and 10.4 hereinabove.

10.7 *Essex Incorporated.* Any and all interest of the parties in and to a corporation known as Essex Incorporated.

10.8 *Norlight Promotions and Norlight Services.* Any and all interest of the parties in and to companies known as Norlight Promotions and Norlight Services.

10.9 *German Shepard Dogs.* Any and all interest of the parties in and to all of the German Shepard dogs owned by them. In this connection, petitioner shall sign appropriate documents to transfer her interest in each of said dogs to the respondent.

10.10 *Other Personal Property.* All of respondent's separate bank accounts, insurance policies, cash, and any and all other personal property owned by and/or in the possession or under the control of respondent, regardless of whether such property is specifically referred to hereinabove.

10.11 *Membership in Moorings Club, Vero Beach, Florida.* Upon entry of this Decree, petitioner agrees that the membership of the parties in the Moorings Club of Vero Beach, Florida will belong solely to the respondent.

10.12 *Pontiac and GMC Suburban Automobiles.* Certain Pontiac and GMC Suburban automobiles currently in the possession of respondent.

September 30, 1986, Order of the District Court, pages 5–8. The Conclusions of Law also provided that custody of Wade Falk shall be shared equally, with each party paying the expenses of the minor child when he is in their custody. With respect to maintenance, the order provided that "[n]either party shall receive spousal maintenance from the other now or in the future." Order of the District Court, page 4.

Following entry of the Judgment and Decree, which incorporated the court's conclusions of law, the transfers of property were executed. On September 14, 1987, Walter Falk filed his chapter 11 petition. He brought this adversary proceeding on the same day alleging that the transfers of property pursuant to the state court Dissolution Judgment and Decree are avoidable under 11 U.S.C. § 548(a)(2).

## II.

Section 548(a) of the Bankruptcy Code allows a trustee or debtor-in-possession [2] to avoid certain transfers of property made by the debtor within one year of filing for bankruptcy.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a). In his capacity as debtor-in-possession, Falk argues that his transfers of property to Hecker, pursuant to the state court judgment, were made for less than reasonably equivalent value under § 548(a)(2), and as such, are avoidable.

Hecker filed an answer and counterclaim [3] on October 13, 1987, generally denying the allegations in Falk's complaint. She now moves for summary judgment on the ground that Falk is collaterally es-

---

**2.** Under 11 U.S.C. § 1107 a debtor-in-possession has, with certain exceptions not applicable here, all the rights and powers of a trustee.

**3.** The counterclaim seeks attorney's fees under Minn.Stat. § 549.21 and Bankruptcy Rule 9011. Hecker's motion seeks summary judgment only on Falk's complaint. Therefore, this order does not address Hecker's counterclaim.

topped by the state court dissolution judgment and decree from asserting that he did not receive a reasonably equivalent value in exchange for the property transferred as a part of the marriage dissolution.

Summary judgment will be granted if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c) provides in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court must view the facts, and all reasonable inferences drawn from the facts, in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390, 392 (8th Cir.1986); *Stokes v. Lokken*, 644 F.2d 779, 782 (8th Cir.1981).

The question presented by this motion is essentially an issue of law: whether the findings and fact and conclusions of law entered in conjunction with a state court marriage dissolution collaterally estop a debtor-in-possession from asserting that the debtor did not receive a reasonably equivalent value in exchange for the property transferred pursuant to the state court's judgment and decree. I find that under the circumstances in this proceeding, collateral estoppel does preclude relitigation of this issue.

■ At the outset, there is some dispute as to whether state or federal law on collateral estoppel is controlling. It is well established that federal courts are "to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so...." *Allen v. McCurry*, 449 U.S. 90, 97, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980). This is based in large part on 28 U.S.C. § 1738 which provides:

[J]udicial proceedings [of any state court] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they would have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. The plain language in § 1738 requires federal courts to give collateral estoppel effect to state court determinations if the courts of that state would preclude relitigation of the issue. However, there is nothing in § 1738 that prohibits a federal court from giving collateral estoppel effect to a state court judgment, even if the state court would not. In other words, while federal courts must at least give the preclusive effect that a state court would give, there is no reason why it cannot expand the doctrine's application if it is consistent with the principles of collateral estoppel established in federal case law.

Having said all that, I do not think that it makes a difference whether state or federal law applies. The requirements for invoking the doctrine are essentially the same under state and federal law.[4]

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 1982. *See Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983); *Van–S–Aviation*

---

4. In fact, Minnesota courts have often cited federal courts when deciding collateral estoppel issues. *See, e.g., Tarutis v. Commissioner of Revenue*, 393 N.W.2d 667 (Minn.1986); *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702 (Minn.1982); *Hentschel v. Smith*, 278 Minn. 86, 153 N.W.2d 199 (1967); *Brunsoman v. Seltz*, 414 N.W.2d 547 (Minn.Ct.App.

1987), *petition for review denied* (Minn. Jan. 15, 1988); *Walden Bros. Lumber, Inc. v. Wiggin*, 408 N.W.2d 675 (Minn.Ct.App.1987), *petition for review denied* (Minn. Aug. 19, 1987); *State v. Iverson*, 396 N.W.2d 599 (Minn.Ct.App.1986), *Petition for review denied* (Minn. Jan. 16, 1987); *Roseberg v. Steen*, 363 N.W.2d 102 (Minn.Ct.App.1985).

*Corp. v. Piper Aircraft Corp.*, 551 F.2d 213, 218–19 (8th Cir.1977). The doctrine has been expanded over the years to bar relitigation of issues, not only as to parties in the previous action, but those in privity as well. *E.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *Duncan v. Clements*, 744 F.2d 48, 51 (8th Cir.1984); *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979). *See also Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982). However, the estopped party must have had a full and fair. opportunity to litigate the issue.[5]

▇ Hecker seeks to preclude relitigation of the issue of whether Falk received reasonably equivalent value in exchange for the money transferred to Heck-

er pursuant to their dissolution judgment and decree. Falk cites three reasons why collateral estoppel does not apply: (1) the issue in the state court proceeding is different from the issue in this proceeding, (2) the state court entered its judgment by consent of the parties, and as a result, the issue was not actually litigated, and (3) Walter Falk as debtor-in-possession is not a privy of Walter Falk the individual. I will address each of Falk's arguments separately.

### (A) Same Issues

Falk first argues that collateral estoppel does not apply because the issues in the two proceedings are not the same. The issue determined in the state court dissolution proceeding was whether Falk received

---

5. The requirement of a full and fair opportunity to litigate apparently developed as a due process safeguard around the time the mutuality requirement was dropped in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). *See Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979); *Hall v. Mangoni*, 17 B.R. 156, 159 (Bktcy.M.D.Tenn.1982). Historically, collateral estoppel required:

> that both the party asserting the prior judgment and the party against whom it is asserted be persons bound by the judgment. In some jurisdictions this remains true, but in most American jurisdictions, including the federal, strangers to the prior action are permitted to plead a collateral estoppel unless it is (sic) appears that the party against whom it is pleaded did not have a full and fair opportunity to litigate the issue or the court finds that it is otherwise unfair to permit the use of collateral estoppel. The judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended.

1B *Moore's Federal Practice*, Para. 0.441[2] (2d ed. 1984) (footnotes omitted).

The demise of the mutuality requirement and the development of the full and fair opportunity to litigate concept have lead to some confusion with respect to the elements necessary to successfully assert collateral estoppel. Some courts use the traditional elements based on the Restatement of Judgments: (1) The issue sought to be precluded must be the same as that involved in the prior litigation; (2) That issue must have been actually litigated; (3) It must have been determined by a valid and final judgment; and (4) The determination must have been essential to the judgment. *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983); *Van–S–Aviation Corp.*

*v. Piper Aircraft Corp.*, 551 F.2d 213, 218–19 (8th Cir.1977); *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976). *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458–59 (5th Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). *See also Hauser v. Mealey*, 263 N.W.2d 803, 806–07 (Minn.1978). Other courts, however, apply somewhat different elements: (1) The issue was identical to one in a prior adjudication; (2) There was a final judgment on the merits; (3) The estopped party was a party or in privity with a party to the prior adjudication; and (4) The estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979); *Gerrard v. Larsen*, 517 F.2d 1127, 1130 (8th Cir.1975); *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979). *See also Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn. 1984); *Willems v. Commissioner of Pub. Safety*, 333 N.W.2d 619, 621 (Minn.1983); *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982).

What can be gleaned from reading the cases using the different approaches is that the traditional restatement elements must be proved in all cases to successfully bar a party from relitigating an issue. The additional element of "a full and fair opportunity to be heard" comes into play only when the party being precluded under the doctrine was not a named party to the previous action. *Hall v. Mangoni*, 17 B.R. 156, 159 (Bktcy.M.D.Tenn.1982). In this situation, the court must inquire whether application of the doctrine against the non-party would be fair. This is a factual issue to be determined on a case-by-case basis. *Oldham v. Pritchett*, 599 F.2d 274, 179 (8th Cir.1979). *See also Brunsoman v. Seltz*, 414 N.W.2d 547, 550 (Minn.Ct.App. 1987), *petition for review denied* (Minn. Jan. 15, 1988).

a "just and equitable" division of the marital property. The issue in this proceeding is whether Falk received a "reasonably equivalent value" in exchange for the property transferred to Hecker pursuant to the dissolution judgment and decree. While the nature and purpose of the two proceedings may be different, I find that the operative facts underlying the determinations are the same.

For purposes of collateral estoppel, there only needs to be a common issue of law or fact in both proceedings. *Hyman v. Regenstein*, 258 F.2d 502, 509 (5th Cir.1958), *cert. denied*, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959). *See also Howe v. Nelson*, 271 Minn. 296, 301, 135 N.W.2d 687, 691 (1965). The fact that different legal conclusions may be drawn from a common issue of fact does not alter the doctrines applicability. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 (5th Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). "[I]t is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief." *Davis v. McKinnon & Mooney*, 266 F.2d 870, 872 (6th Cir.1959). *See also* 46 Am.Jur.2d *Judgments* § 415 (1969) and cases cited therein. Examination of Minnesota statute § 518.58 and Bankruptcy Code § 548(a)(2)(A) clearly shows the factual determinations common to both actions.

Under Minnesota statute § 518.58, the state court must "make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property." Minn.Stat. § 518.58 (1986). It is "conclusively presumed" for purpose of property division that each spouse made a substantial contribution to the acquisition of income and property during the marriage. *Id.* Although an equal division is not mandated by § 518.58, *Paul v. Paul*, 410 N.W.2d 329, 332 (Minn.Ct.App.1987); *Smith v. Smith*, 410 N.W.2d 334, 337 (Minn.Ct.App.1987), *petition for review denied* (Minn. Sept. 30, 1987); *Letsch v. Letsch*, 409 N.W.2d 239, 243 (Minn.Ct.App.1987); *Brockman v. Brockman*, 373 N.W.2d 664, 665 (Minn.Ct. App.1985); *Riley v. Riley*, 369 N.W.2d 40, 43 (Minn.Ct.App.1985), *petition for review denied* (Minn. Aug. 29, 1985); courts have determined that an equal division is appropriate, particularly in situations involving long-term marriages. *Miller v. Miller*, 352 N.W.2d 738, 742 (Minn.1984); *Arundel v. Arundel*, 281 N.W.2d 663, 666 (Minn.1979). *See also Wilson v. Wilson*, 388 N.W.2d 432, 433 (Minn.Ct.App.1986), *petition for review denied* (Minn. Aug. 20, 1986); *Quick v. Quick*, 381 N.W.2d 5, 7–8 (Minn. Ct.App.1986); *Cronin v. Cronin*, 372 N.W. 2d 778, 781 (Minn.Ct.App.1985), *petition for review denied* (Minn. Oct. 11, 1985); *Elwell v. Elwell*, 372 N.W.2d 67, 71 (Minn. Ct.App.1985). The court weighs a number of factors [6] in dividing the marital property based on the choate and inchoate rights of the parties.

These same rights are the basis of the bankruptcy court's value determination under 11 U.S.C. § 548(a)(2)(A). The debtor must have received "a reasonably equivalent value" in exchange for the property transferred pursuant to the dissolution judgment and decree. The term value in § 548(a)(2)(A) encompasses more than mere money or property. It includes anything given up or transferred in consideration of something else. H.R.Rep. No. 595, 95th Cong., 2d Sess. 375, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6331. Virtually every court addressing the fraudulent transfer valuation in a divorce context has concluded that marital rights and obligations, such as support and mainte-

---

**6.** Section 518.58 lists several factors for the court to consider:

The court shall base its findings on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the martial property, as well as the contribution of a spouse as a homemaker.

Minn.Stat. § 518.58 (1986).

**964**

nance, should be considered in the value determination. *Harman v. Sorlucco,* 68 B.R. 748, 753 (Bktcy.D.N.H.1986); *In re Ottaviano,* 63 B.R. 338, 341 (Bktcy.D.Conn. 1986); *Goldstein v. Lange,* 35 B.R. 579, 586 (Bktcy.E.D.Mo.1983). *See also Gray v. Snyder,* 704 F.2d 709, 712 (4th Cir.1983); *Britt v. Damson,* 334 F.2d 896, 903 n. 13 (9th Cir.1964), *cert. denied,* 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); *In re Chappel,* 243 F.Supp. 417, 420 (S.D.Cal. 1965). *But see Blackwell v. Wallace,* 66 B.R. 834, 844 (Bktcy.E.D.Mo.1986).

Although no court has yet given collateral estoppel effect to the state court findings, there is much support for the proposition that the factual determinations on value are the same. The court in *In re Chappel,* held that a wife's waiver of alimony created a rebuttal presumption that the transfers of property in the dissolution proceeding were supported by "fair consideration."[7] 243 F.Supp. 417, 420 (S.D.Cal. 1965). In *Britt v. Damson,* the Ninth Circuit Court of Appeals suggested that the state court determination could give rise to a conclusive presumption of fair consideration. 334 F.2d 896, 903 n. 13 (9th Cir.1964), *cert. denied,* 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965). Finally, the court in *Harman v. Sorlucco* held that § 548(a)(2)(A) should be interpreted to require only a "surface determination" by the bankruptcy court. 68 B.R. 748, 753 (Bkrtcy.D.N.H.1986). The mere fact that these courts gave the state court findings some preclusive weight evidences the identical nature of the issues in both proceedings. While the underlying actions may be different, the operative facts are the same. Consequently, the requirement that both actions involve the same factual issue for applying collateral estoppel is met.

### (B) *Actually Litigated*

The second reason Falk cites against applying collateral estoppel in this proceeding

is that the issue in the state court dissolution proceeding was not actually litigated. Because the parties stipulated to the division of assets, Falk argues that court never adjudicated the parties rights in the property. As a result, the dissolution judgment and decree should not be given preclusive effect.

The law on this issue is well-settled. In Minnesota, as well as the Eighth Circuit, a consent decree has the same preclusive effect as if it was fully litigated. In *Pangalos v. Halpern,* the Minnesota Supreme Court set forth the general rule regarding consent decrees:

> In the absence of fraud, a valid judgment, decree, or as here an order which is the equivalent thereof, entered by agreement or consent, operates as res judicata to the same extent as if it had been rendered after contest and full hearing and is binding and conclusive upon the parties and those in privity with them.

247 Minn. 80, 85–86, 76 N.W.2d 702, 706 (1956), *cited with approval in, Hentschel v. Smith,* 278 Minn. 86, 153 N.W.2d 199, 203 (1967). Likewise, in *Crane Boom Life Guard Co., Inc. v. Saf–T–Boom Corp.,* the Eighth Circuit Court of Appeals noted that "[a]s a general proposition, a valid judgment or decree ... entered by agreement or consent, operates as res judicata to the same extent as a judgment or decree render after a contest." 362 F.2d 317, 321 (8th Cir.1966), *cert. denied,* 386 U.S. 908, 87 S.Ct. 853, 17 L.Ed.2d 782 (1967) (emphasis omitted). Thus, it is clear that the dissolution judgment and decree can have preclusive effect in this proceeding.

While it is ultimately in the court's discretion whether a consent decree will operate to bar relitigation in a particular case, I find no reason not to do so here.[8] The

**7.** The term "fair consideration" was used in the previous fraudulent transfer statute, § 67(d) of the Bankruptcy Act of 1898. Act of July 1, 1898, ch. 541, 30 Stat. 544 (repealed 1979). There is no indication in the legislative history that Congress intended a change in substantive law by using the term "reasonably equivalent value" in 11 U.S.C. § 548(a)(2)(A) of the Bankruptcy

Code. Thus, the precedential value of the Bankruptcy Act case law is not materially affected. *See In re Ottaviano,* 63 B.R. 338, 342 n. 6 (Bkrtcy.D.Conn.1986).

**8.** Falk argues that it is unfair and against public policy to apply a consent decree against a nonparty. These concerns deal with the issue of

stipulation in the dissolution proceeding was negotiated at arms-length for over a year and one-half, with both parties being represented by separate counsel. Moreover, the state court had a statutory duty [9] to make specific findings of fact and approve the stipulation only if it provides for a just and equitable division of the marital property. This is not a typical civil lawsuit where the court has no obligation to scrutinize the settlement. Under the circumstances, the consent decree satisfies the actually litigated requirement of collateral estoppel.

### (C) *Privity*

The final argument Falk raises for not applying collateral estoppel is lack of privity. He asserts that Walter R. Falk as debtor-in-possession is not a privy to either party in the dissolution proceeding. The debtor-in-possession represents the interests of creditors who were not participants in the earlier action, and therefore, should not be bound by the judgment and decree.

The concept of privity has been defined in a number of ways. Some courts view controlling participation and active self-interest in the original litigation as two key indicators of privity. *Pirrotta v. Independent School Dist. No. 347*, 396 N.W.2d 20, 22 (Minn.1986); *Brunsoman v. Seltz*, 414 N.W.2d 547, 550 (Minn.Ct.App.1987), *petition for review denied* (Minn. Jan. 15, 1988); *Miller v. Northwestern Nat'l Ins. Co.*, 354 N.W.2d 58, 62 (Minn.Ct.App.1984). Other courts concentrate on the identity of rights, finding privity exists where the party in the previous litigation represented the same legal right as the party being estopped. *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975) (privity exists where the party's interests are so closely aligned as to be his virtual representative); *Jefferson School of Social Science v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C.Cir.1963) (privity designates a person so identified an

interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved); *First Nat'l Bank v. Ickes*, 154 F.2d 851, 853 n. 9 (D.C.Cir.1946) (privity is a mutual or successive relationship to the same rights of property); 46 Am.Jr.2d *Judgments* § 532 (1969) and cases cited therein. *See also Hentschel v. Smith*, 278 Minn. 86, 153 N.W.2d 199, 206 (1967) (privies are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest and consequently to be affected with them by the litigation); *Margo–Kraft Distributors, Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 47–48 (1972). *But see Pirrotta v. Independent School Dist. No. 347*, 396 N.W.2d 20, 22 (Minn.1986) (fact that interests may coincide is not enough). Still other courts define privity less rigidly as "a finding that all of the facts and circumstances justify a conclusion that nonparty preclusion is proper." *First Alabama Bank v. Parsons Steel, Inc.*, 747 F.2d 1367, 1378 (11th Cir.1984), *rev'd on other grounds*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). *See Gill and Duffus Services, Inc. v. A.M. Nural Islam*, 675 F.2d 404, 405 (D.C.Cir.1982); *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979); *Towle v. Boeing Airplane Co.*, 364 F.2d 590, 593 (8th Cir.1966). Whatever definition is used, there is a general consensus among courts that the basic requirement of privity is fairness. *First Alabama Bank*, 747 F.2d at 1378; *United States v. Karlen*, 645 F.2d 635, 639 (8th Cir.1981) (focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged); *Anthan v. Professional Air Traffic Controllers Organization*, 672 F.2d 706, 710 (8th Cir. 1982); *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979) (focus is on whether application of collateral estoppel will work an injustice if applied). *See also Johnson v. Consolidated Freightways, Inc.*, 420 N.W.

---

privity, not whether a consent decree was actually litigated. As such, I will address them in the section on privity later in this order.

**9.** Section 518.58 provides that "the court shall make a just and equitable division of the marital property ... after making findings regarding the division of the property." Minn.Stat. § 518.58 (1986).

2d 608, 614 (Minn.1988) (focus is on whether collateral estoppel will work an injustice if applied); *Brunsoman v. Seltz*, 414 N.W.2d 547, 550 (Minn.Ct.App.1987), *petition for review denied* (Minn. Jan. 15, 1988) (basic requirement is that the estopped party's interests have been sufficiently represented in the first action so that the application of collateral estoppel is not inequitable); *Miller v. Northwestern Nat'l Ins. Co.*, 354 N.W.2d 58, 61–62 (Minn. Ct.App.1984).

In *First Alabama Bank v. Parsons Steel, Inc.*, 747 F.2d 1367 (11th Cir.1984), *rev'd on other grounds*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)[10], the Eleventh Circuit Court of Appeals discussed privity in a case involving a bankruptcy trustee.

'Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.' *Aerojet–General Corporation v. Askew*, 511 F.2d 710, 719 (5th Cir.1975), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

. . .

A finding of privity is no more than a finding that all of the facts and circumstances justify a conclusion that nonparty preclusion is proper. Wright, Miller & Cooper, 18 Federal Practice and Procedure § 4459, at p. 418 (1981). 'Modern decisions search directly for circumstances that justify preclusion ... This process often leads to a conclusion that preclusion is justified as to some matters but not others.' *Id.*, at p. 419.

747 F.2d at 1378. The court found that the trustee was a privy to the parent company of the corporation in bankruptcy (Parsons Steel, Inc.) and the individual co-owners of the parent (Melba and Edward Parsons). Thus, even though not a party to previous litigation between the bank, Parsons Steel, Inc., and Melba and Edward Parsons, the trustee had an "identity of interests" with the parties and was "virtually represented" as to the issues litigated in the previous action.[11] 747 F.2d at 1379. *See also Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). *But see Goldstein v. Lange*, 35 B.R. 579, 585 (Bktcy.E.D.Mo.1983).

Similarly, in *Towle v. Boeing Airplane Co.*, 364 F.2d 590 (8th Cir.1966), the Eighth Circuit Court of Appeals found that the promoters of a corporation in bankruptcy were privies of the bankruptcy trustees. The trustees brought an action against Boeing[12] for fraud and breach of implied warranty with respect to the sale of a helicopter. The litigation resulted in a $180,295.23 judgment for the bankruptcy estate. In a subsequent action against Boeing brought by the corporation's promoters, the district court held that the promoters' claims for fraud and breach of warranty were barred by the doctrine of res judicata. The Court of Appeals affirmed, finding that the promoters as officers, directors, and stockholders of the corporation in bankruptcy, were privies of the estate. 364 F.2d at 593.

In this proceeding, I find that the facts and circumstances warrant a finding of privity. Walter Falk, as debtor-in-possession, has a sufficient identity of interest to Walter Falk, the individual, to justify application of collateral estoppel. The factual findings with respect to the value of property transferred and received pursuant to the dissolution judgment and decree are identical. The fact that Falk now acts as debtor-in-possession does not change the

**10.** *First Alabama Bank v. Parsons Steel, Inc.*, has a long and complicated procedural history. The United States Supreme Court reversed the Eleventh Circuit on grounds unrelated to the court's discussion of privity. 474 U.S. 518, 526 n. 4, 106 S.Ct. 768, 773 n. 4, 88 L.Ed.2d 877 (1986). On remand and subsequent appeal from the district court, the Eleventh Circuit reaffirmed its ruling on privity. 825 F.2d 1475, 1486 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

**11.** The court also noted that the trustee knew of the previous litigation and chose not to intervene. 747 F.2d at 1379.

**12.** The helicopter actually was purchased from Vertol Aircraft Corporation. Vertol then was merged in Boeing, with Boeing assuming all liabilities of Vertol.

value determinations in the dissolution proceeding or in this proceeding. The debtor-in-possession's legal position under § 548(a)(2)(A) depends entirely upon the exchange of property between Falk and Hecker under state family law. As debtor-in-possession, Falk does not obtain any new rights with respect to the property's value. He and Hecker have the same choate and inchoate interests in the property now as they did at the time of the divorce. There is no need for the bankruptcy court to re-try the dissolution proceeding, absent some evidence of fraud or collusion by the parties.[13]

The court in *In re Sorlucco*, 68 B.R. 748 (Bktcy.D.N.H.1986), used the same rationale in ruling that § 548(a)(2)(A) requires only a "surface determination" of value by the bankruptcy court. Noting the special nature of divorce proceedings and the need for comity between state and federal courts,[14] Judge Yacos reasoned:

> In my judgment Congress by use of the language 'reasonably equivalent value' has provided sufficient flexibility for reconciling the different public policy purposes between the state and federal laws. I believe that the bankruptcy standard in this context should be interpreted to require only a 'surface determination' by the bankruptcy court that the division of marital property between the divorcing parties was within the range of likely distribution that would be ordered by the state divorce court if the property division had actually been litigated in that state court. In the present case I have

no doubt that the distribution agreed upon by the debtor and Mrs. Sorlucco would have been with the range of such distribution in an actual litigated divorce proceeding.

> I realize that the approach I take here is not supported by any existing case law. However, the alternative is for the bankruptcy court in effect (sic) become a court of 'de novo divorce jurisdiction' to reexamine and redetermine the balancing of various choate and inchoate marital rights and interests in property—to determine whether what the nondebtor spouse 'gave up' was equal to what that spouse received as a result of the divorce decree. I cannot believe that Congress intended bankruptcy courts to have that overreaching, overarching function with regard to the state courts in family law matters.

68 B.R. at 753–54 (emphasis omitted). While the court stopped short of giving the state court findings collateral estoppel effect, the practical result[15] of the decision in *Sorlucco* is the same: absent fraud or collusion, the property division established by the dissolution, judgment, and decree preclude the debtor from arguing lack of reasonably equivalent value under § 548(a)(2)(A).

As did Judge Yacos in *In re Sorlucco*, I realize that the approach taken in this order is not supported by existing case law. However, I believe the policies underlying collateral estoppel and the development of the doctrine in recent years support the

**13.** Falk makes much of the fact that as debtor-in-possession he represents the interests of creditors, and if preclusive effect is given the dissolution judgment and decree, the creditors' interests are left unprotected. This argument, however, ignores the other provisions of 11 U.S.C. § 548. If there is evidence of fraud or collusion, the trustee or debtor-in-possession can attack the exchange of marital property under § 548(a)(1) which avoids transfers made with actual intent to hinder, delay, or defraud. 11 U.S.C. § 548(a)(1).

**14.** This is especially true in matters of family law. *See e.g. Boyd v. Robinson,* 741 F.2d 1112 (8th Cir.1984). In *Boyd,* the debtor brought an action under 11 U.S.C. § 522 to avoid a lien on her homestead obtained by her former husband pursuant to their marriage dissolution. The

court found that the debtor's husband had a pre-existing interest in the homestead under Minnesota family law, and therefore, the lien created by the state court to protect the husband's interest did not attach to an interest of the debtor within the meaning of § 522. 741 F.2d at 1114–15.

**15.** It also can be argued that decisions giving the dissolution judgment and decree presumptive weight have the same practical result as collateral estoppel. *See Britt v. Damson,* 334 F.2d 896, 903 n. 13 (9th Cir.1964), *cert. denied,* 396 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965) (court suggested that state court findings could give rise to a conclusive presumption); *In re Chappel,* 243 F.Supp. 417, 420 (S.D.Cal.1965) (court held that wife's waiver of alimony created a rebuttable presumption).

conclusion reached. Courts have long-recognized the public policy considerations in favor of liberally applying collateral estoppel. In *Allen v. McCurry*, the United States Supreme Court noted that "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *See also Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). The doctrine also serves to "promote the comity between state and federal courts that has been recognized as the bulwark of the federal system." *Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. at 415.

In light of these strong public policies, the United States Supreme Court has moved toward abandoning the strict elements of the doctrine in favor of a "fairness" approach to its application. *See, e.g., Oldham v. Pritchett*, 599 F.2d 274, 278 (8th Cir.1979). Two Supreme Court decisions are particularly illustrative of this trend. In *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court eliminated the requirement of mutuality of parties, and in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the court allowed collateral estoppel to be used offensively for the first time. Both cases evidence a rejection of a strict adhesion to the traditional elements of collateral estoppel in situations which promote the public policies mentioned above. Extension of the doctrine in this proceeding is consistent with, and in furtherance of, the policies set out in *Blonder–Tongue* and *Parklane Hosiery*.

As a final note, it is important to mention the limitations of my decision. First, collateral estoppel only acts to bar relitigation of the valuation issue under § 548(a)(2)(A).

This is not a case of complete claim preclusion. Second, and perhaps most important, collateral estoppel will not apply if there is any evidence of fraud or collusion on the part of the parties to the divorce proceeding.[16] Neither of these is present here.

Since the plaintiff is precluded from trying to prove that he received less than reasonably equivalent value for his transfer, his complaint fails and the defendant is entitled to judgment as a matter of law.

THEREFORE, IT IS ORDERED:

1. The defendant's motion for summary judgment is granted.

2. The plaintiff's complaint to avoid the transfers to the defendant is denied.

---

16. This second limitation covers the situation presented in *Conti–Commodity Services, Inc. v. Clausen*, 44 B.R. 41 (Bktcy.D.Minn.1984). In that case, the court found that the debtor's default in his divorce proceeding constituted a transfer of property with intent to defraud creditors. Although the action in *Clausen* was brought as an objection to discharge under 11 U.S.C. § 727, the same findings of an intent to defraud may be the basis for avoiding the transfer of property under 11 U.S.C. § 548(a)(1). The plaintiff does not allege that he made any of these transfers with the intent to hinder, delay or defraud his creditors.